RICE BARTON CORPORATION v.
UNITED STATES.
No. 46814.

United States Court of Claims.
Feb. 6, 1950.

Frank B. Wallis, Boston, Mass., for the plaintiff. John S. Mechem and Goodwin, Proctor & Hoar, Boston, Mass., were on the brief.

Mary K. Fagan, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

In this case plaintiff seeks to recover from the United States under section 17(a) of the Contract Settlement Act of 1944, 41 U.S.C.A. § 117, fair compensation for certain engine parts which the plaintiff, because of certain alleged assurances and guaranties of the United States Maritime Commission, furnished to Springfield Machine & Foundry Company (hereinafter referred to as "Springfield"), and which Springfield delivered to Harrisburg Machinery Corporation, its parent company (hereinafter referred to as "Harrisburg") for incorporation in Liberty engines under contracts of Harrisburg with the Maritime Commission.

In the spring of 1942, the plaintiff agreed to accept purchase orders from Springfield for the delivery of engine parts to Springfield and pursuant to that agreement proceeded to process and deliver such parts to Springfield. Almost from the beginning, Springfield failed to live up to its credit terms although it did make payments from time to time. In October 1942, the plaintiff notified Springfield that because of the latter's delinquency in payment it (the plaintiff) could not continue making deliveries. However, Springfield thereafter made some payments on account though not in sufficient amount to wipe out the delinquencies and the plaintiff continued to make shipments until December 8, 1942.

On December 9, 1942, the plaintiff explained to Mr. C. E. Walsh, Chief, Procurement Section, Construction Division, Maritime Commission, who had charge of the Harrisburg contract for the Liberty engines, the difficulties it was having with Springfield and told him that plaintiff could not continue the delivery of the engine parts. In that conversation and subsequent conversations, which are referred to in our findings and which will be dealt with in more detail in our discussion on the merits of the issue relating to the right of recovery, Walsh urged plaintiff to continue shipments and told plaintiff that the Maritime Commission would guarantee payments therefor. On December 19, 1942, the plaintiff resumed shipments and continued those shipments during January and February, 1943. Springfield made some payments on account but failed to pay the full amount due plaintiff. In March 1943, Springfield and Harrisburg filed petitions in bankruptcy and shortly thereafter the Maritime Commission terminated its contracts with Harrisburg. Plaintiff was unable to recover any of the unpaid balance from Springfield. Plaintiff sought recovery from the Maritime Commission on the ground that it had made the shipments on the assurances of Walsh, an officer or agent of the Maritime Commission. Upon the refusal of the Maritime Commission to pay, plaintiff filed this suit.

Prior to a consideration of the case on its merits we are met with a threshold question advanced by defendant to the effect that the Court is without jurisdiction to consider the claim on its merits by reason of plaintiff's failure to initiate this action within the limitation period of ninety days provided by the Contract Settlement Act of 1944. That act provides for the settlement of claims by the contracting agency and further provides for the procedure which a contractor must follow in order to obtain relief when he is

not satisfied with the disposition of his claim by the contracting agency. One of the avenues of relief permitted by subsection (b) of section 13 of that act is a suit in this Court and subsection (c) (2) of the same section further provides— "A war contractor may initiate proceedings in accordance with subsection (b) of this section (i) within ninety days after delivery to him of the findings by the contracting agency, or (ii) in case of protests or appeal within the agency, within ninety days after the determination of such protest or appeal, or (iii) in case of failure to deliver such findings, within one year after his demand therefor." 41 U. S.C.A. § 113.

The jurisdictional issue arises in this manner: After the bankruptcy of Springfield and Harrisburg, plaintiff sought to collect from the Maritime Commission the amount due from Springfield and in so doing had telephone conversations and conferences with Walsh who, as heretofore shown, had given the assurances on which plaintiff relied. After a telephone conversation with Walsh in September, 1944, plaintiff's president, at Walsh's request, wrote a letter to Walsh in which he reviewed the history of plaintiff's dealings with Springfield, the telephone conversations with Walsh, and urged upon Walsh that the shipments in question to Springfield would not have been made had it not been for Walsh's assurance, and that therefore the Maritime Commission should make payment to plaintiff of the amount in question which is the same amount involved in this suit. Apparently what Walsh desired was a summarization of what had occurred which he might use as a basis for his recommendation to the Maritime Commission for payment, he having indicated to plaintiff's president that he was going to recommend that the Maritime Commission make payment. After the receipt of that letter, Walsh transmitted it to the officials of the Maritime Commission with a recommendation for payment. December 27, 1944, the Maritime Commission advised plaintiff that it had considered the recommendations of Walsh with respect to payment and that, while

it recognized that the assurances given by Walsh with respect to the shipments of the material in question were given in good faith, it was of the opinion that there was no express or implied authority vested in the Commission whereby it might authorize payment of plaintiff's claim and that therefore the claim was denied.

Shortly thereafter plaintiff took the matter up with Senator Walsh who wrote a letter to the chairman of the Maritime Commission. In reply to that letter the chairman of the Maritime Commission reviewed the entire situation and advised Senator Walsh why the Maritime Commission considered it was without authority to make payment to plaintiff. In conclusion, the chairman called attention to the Contract Settlement Act of 1944, 41 U.S.C.A. § 101 et seq., and suggested the possibility that plaintiff might obtain relief from that source, the final sentences in his letter reading as follows: "It may be possible that further consideration to the Rice Barton claim could be given if the company requested relief under Section 17 of the Act following the above-mentioned procedures. It is my understanding however, that to date no claim under the Contract Settlement Act has been filed."

Pursuant to the above suggestions, plaintiff filed a claim under section 17 of the Contract Settlement Act of 1944 with the Maritime Commission on June 18, 1945, and on August 13, 1945, made demand for a determination of the amount due on its claim and for the preparation and delivery of findings on that claim.

■ What defendant says is that plaintiff's letter to Walsh of September 25, 1944, was a claim within the meaning of the Contract Settlement Act, that the contracting agency (the Maritime Commission) took action thereon on December 27, 1944, that the period within which plaintiff could bring suit in this Court expired ninety days thereafter, and that since plaintiff did not bring suit within that period its claim is barred from consideration by this Court. We disagree. From the facts as recited above it is clear that the letter to Walsh was little more than an informal recitation

of the history of the matter and a further step in the negotiations which plaintiff was carrying on with Walsh. It was lacking both in form and in substance what was required for the presentation of a claim to a contracting agency under the Contract Settlement Act. It is true that in turning down Walsh's recommendation for payment the Maritime Commission referred to the substance of the matter contained in the letter as a claim and that it refused to make payment thereof, but there is nothing to suggest that when the Maritime Commission wrote the letter of December 27, 1944, it purported to act under the Contract Settlement Act or that it was thereby purporting to deliver to plaintiff its findings as contemplated by that act, or that by such letter the statutory period for bringing suit or pursuing other relief under that act would start to run. In fact, shortly thereafter, when Senator Walsh made inquiry in regard to the status of the matter, the chairman of the Maritime Commission suggested the filing of a claim under the Contract Settlement Act and stated that it was his understanding that at that time (April 16, 1945) no claim under that act had been filed. Shortly after that suggestion was made, plaintiff did file a claim and make demands which both parties agree satisfy the requirements of the Contract Settlement Act and this suit was timely filed thereafter.

It accordingly follows that defendant's claim of our lack of jurisdiction by reason of plaintiff's failure to initiate this action within ninety days after the Maritime Commission's action of December 27, 1944, must be denied.

The suit on its merits arises under section 17(a) of the Contract Settlement Act of 1944 which provides as follows: "(a) Where any person has arranged to furnish or furnished to a contracting agency or to a war contractor any materials, services, or facilities related to the prosecution of the war, without a formal contract, relying in good faith upon the apparent authority of an officer or agent of a contracting agency, written or oral instructions, or any other request to proceed from a contracting agency, the contracting agency shall pay such person fair compensation therefor."

The first objection by defendant is that the above section is inapplicable to plaintiff for the reason that plaintiff had a formal contract with Springfield to whom it furnished the materials in question, that it furnished these materials in reliance upon that contract, and therefore we do not have a situation where material is being furnished without a formal contract as required by the applicable statute. It is true that plaintiff's original contractual arrangements were with Springfield and that it continued in reliance thereunder until December 8, 1942, when it brought the matter to the attention of Walsh, a responsible officer or agent of the Maritime Commission. However, Springfield was a subcontractor of Harrisburg, which had a contract with the Maritime Commission, Walsh's interest in the matter was to see that the Maritime Commission's contract with Harrisburg was fulfilled. He concerned himself with seeing to it that the materials or supplies which Harrisburg needed and which plaintiff was furnishing to Springfield were delivered to Harrisburg. It was because plaintiff stated to Walsh that Springfield had in effect breached its contract through failure to meet its credit terms and therefore plaintiff would no longer continue under whatever contractual arrangements it had theretofore had with Springfield that Walsh gave assurances on behalf of the Government. When therefore plaintiff furnished the materials in reliance upon the assurance given by Walsh, it was doing so without a formal contract with the Government and in reliance upon the good faith of the representations of the officer or agent of the contracting agency which desired to receive and did receive these materials; namely, the Maritime Commission. The fact that plaintiff had theretofore been furnishing supplies to Springfield under a valid enforceable contract is no more material than if it had been furnishing supplies to the Maritime Commission under a similar contract and that as a result of assurances by an agent of the Maritime Commission it furnished supplies

over and beyond the contractual obligation. The clear intent of the statute is to reach those inequitable situations where material was furnished to the Government which was not covered by a contract and that would be just as true where there was no contract at all as where it was outside an existing contract.

■ In the next place, defendant seeks to minimize the extent of the assurances given by Walsh and the extent of plaintiff's reliance thereon. We have found as a fact that when plaintiff was reluctant to proceed with the shipments, Walsh pointed out to plaintiff the extreme need for this material, urged plaintiff to continue shipments, and assured plaintiff that the Maritime Commission would guarantee payment to plaintiff for such shipments. Such was the positive testimony of plaintiff's officers who had the contract with Walsh. It is little more than a paraphrase of what the Maritime Commission itself said in its letter to plaintiff of December 27, 1944, refusing payment for plaintiff's claim, and in the letter of the chairman of the Maritime Commission to Senator Walsh, of April 15, 1945, which were in the nature of admissions by the Maritime Commission. Defendant saw fit not to call Walsh as a witness and offered no explanation why he was not called. In that situation it is reasonable to conclude that had he been called he would not have given testimony more favorable to the Government.

■ Defendant further urges that there was a lack of reliance by plaintiff on whatever assurances were given by Walsh for the reason that plaintiff continued after the assurances were given to try to collect from Springfield. We attach no significance to these efforts on plaintiff's part. The statute with which we are concerned had not then been enacted. It came into being because many suppliers had furnished materials and rendered services under situations somewhat similar to that of plaintiff's, and until that act was passed the statutory basis for compensating such suppliers was lacking. It was not only natural but the prudent thing for plaintiff to seek recovery as far as possible from Springfield. Had it not done so, we have no doubt defendant would have urged that as one of the defenses in this suit. It was only after plaintiff had exhausted all hope of further relief from Springfield that it asked the Maritime Commission to make good on the guaranties given by Walsh.

In our opinion, plaintiff has brought itself within the provisions of the governing statute. The materials were furnished at a time when we were engaged in an all-out wartime endeavor. Walsh would have been remiss in the discharge of his duty had he not done everything possible to see to it that essential supplies urgently needed for the completion of an important Government contract were forthcoming. He was well aware of the precarious financial condition of Springfield and Harrisburg. In that situation, plaintiff's vice president quoted Walsh as saying: "If the loan [financial aid which the Maritime Commission was undertaking to secure for Springfield and Harrisburg] isn't granted, the Maritime Commission will take care of you, but whatever you do, don't stop making your shipments." Plaintiff responded to the entreaties of Walsh and continued to furnish the materials and those materials found their way into engines for Liberty ships for use in the prosecution of the war. We think section 17(a) was intended to cover that kind of situation and that plaintiff has brought itself within the provisons of that act.

There remains for determination the amount of recovery. On December 8, 1942, when plaintiff stopped shipment and had its first conversation with Walsh, the balance owing by Springfield to plaintiff was in the amount of $28,113.70 which included the balance due on material which had been shipped and invoiced and also material which had been shipped but not yet invoiced. Plaintiff made no shipments and Springfield made no payments between December 8 and December 18, 1942. After December 18, 1942, Springfield made payments to plaintiff from time to time in the total amount of $27,215.01 which, in accordance with plaintiff's method of bookkeeping and pursuant to good accounting

practice, plaintiff applied against its earliest unpaid invoices to Springfield. Such payments left a balance due on the indebtedness existing on December 8, 1942, of $898.69. Obviously, the Government cannot be charged with obligations incurred prior to December 8, 1942. Since all of the amount paid after December 18, 1942, was required to liquidate the indebtedness existing on that date, nothing remained to apply on the shipments made after December 18, 1942, which were in the amount of $31,105.34.

Of these shipments engine parts amounting to $11,396.50 had already been processed and were ready for shipment prior to December 8, 1942, before the guarantee was given. These parts were specially prepared for a specific purpose. The record does not show what if any value these parts had for any other purpose. The question is whether these parts should be included in the old account which was not guaranteed. If the $11,396.50 is subtracted from the $31,105.34, there is left a balance of $19,708.84, covering the amount of goods that were processed and shipped after December 8, 1942. These latter shipments were definitely guaranteed.

The writer feels that the articles that were fully processed but not shipped should be treated as a part of the old account, that by no rule of law or equity should they be included within the limits of the assurance on which plaintiff was authorized in good faith to rely, and that judgment should be limited to the sum of $19,708.84, covering only the amount of goods that were both processed and shipped after December 8, 1942. Judge LITTLETON concurs in this viewpoint.

■ However, a majority of the members of the court are of the opinion that recovery should also include the amount of the goods that were processed before December 8, 1942, the date of the guarantee but not shipped until after that date, since the plaintiff had refused to ship these previously processed articles until after the guarantee. The majority believe that these parts were definitely guaranteed and would not have been shipped otherwise, and that the defendant benefitted by such shipment as fully as it did from the articles subsequently processed and shipped.

Accordingly judgment will be entered for plaintiff for $31,105.34.