**MIDDLE ATLANTIC CONFERENCE NATIONAL MOTOR FREIGHT TRAFFIC ASSOCIATION, INC., Rocky Mountain Motor Tariff Bureau, Inc., Plaintiffs,**

and

**Waterways Freight Bureau, Traffic Executive Association, Eastern Railroads, and Household Goods Carriers' Bureau, Intervening Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Orville L. Freeman, Secretary of Agriculture, Intervening Defendant.**

Civ. A. No. 16462.

United States District Court
D. Maryland.

Feb. 21, 1967.

R. Carleton Sharretts, Jr., Baltimore, Md., Bryce Rea, Jr., Washington, D. C.,

F. G. Freund, Washington, D. C., LeGrand A. Carlston, Denver, Colo., Rea, Cross & Knebel, Washington, D. C., of counsel, for plaintiffs.

Russell S. Bernhard, Macleay, Lynch, Channing & Bernhard, Washington, D. C., Francis J. Ford, Rockville, Md., for intervening plaintiff Household Goods.

Bryce Rea, Jr., Washington, D. C., R. Carleton Sharretts, Jr., Baltimore, Md., Rea, Cross & Knebel, Washington, D. C., of counsel, for intervening plaintiff Waterways Freight.

Albert W. Laisy, Baltimore, Md., John A. Daily, New York City, Eugene E. Hunt, New Haven, Conn., Edward A. Kaier and Margaret P. Allen, Philadelphia, Pa., and Malcolm R. Warnock, New York City, for intervening plaintiff Traffic Executive Assn.

Thomas J. Kenney, U. S. Atty., and Arthur G. Murphy, First Asst. U. S. Atty., Baltimore, Md., Donald F. Turner, Asst. Atty. Gen., Robert B. Hummel and Jerry Z. Pruzansky, Department of Justice, for United States of America.

Charles W. Bucy, Asst. General Counsel and Joseph E. Quin, for Department of Agriculture.

Robert W. Ginnane, General Counsel and Thomas H. Ploss, Washington, D. C., for Interstate Commerce Commission.

Before SOBELOFF, Circuit Judge, THOMSEN, Chief District Judge, and WATKINS, District Judge.

PER CURIAM:

This is an action brought under sections 1336, 1398, 2284 and 2321–2325 of Title 28, U.S.C. to enjoin, annul and set aside a declaratory order of the Interstate Commerce Commission dated September 24, 1964 in Interpretation of Government Rate Tariff for Eastern Central Motor Carriers Association, Inc., Docket No. 34248, 323 I.C.C. 347. The proceedings before the Commission were initiated by a petition filed on April 12, 1963, by the Eastern Central Motor Carriers Association, Inc. (Eastern Central) (an organization representing some 1,300 common carriers of property by motor vehicle) whereby a declaratory order was sought from the Commission under section 5(d) of the Administrative Procedure Act (5 U.S.C. § 1004(d)) in order to remove any uncertainty with respect to the lawfulness of transportation service performed at rates quoted according to the provisions of sections 22 and 217(b) of the Interstate Commerce Act, 49 U.S.C. sections 22 and 317(b), where a commercial bill of lading is used with an endorsement declaring that the transportation is for the Government[1] and that the costs of transportation are to be reimbursed by the Government.

Specifically the petition recited that Eastern Central had received a request to amend Item 50 of its Government Rate Tariff No. 1, published on behalf of a large number of motor carriers, to add certain language, emphasis supplied, to the Item:

"The rates named in this Tariff are published under the authority of sections 22 and 217 of the Interstate Commerce Act and are applicable only upon shipments which are shipped by or for the government (1) on Government Bills of Lading, (2) on Commercial Bills of Lading endorsed to show that such Bills of Lading are to be exchanged for Government Bills of Lading at destination, *or (3) on Commercial Bills of Lading endorsed with the following legend: 'Transportation hereunder is for the Government and the transportation cost paid to the carrier(s) by the shipper or reciever is to be reimbursed by the Government.'*"

Eastern Central was uncertain as to whether or not such an endorsement would be sufficient to qualify a shipment for section 22 quotations; and thus to avoid possible violation of the Interstate Commerce Act and of the Elkins Act,[2]

---

1. The "Government" as used hereinafter refers to all governmental beneficiaries of section 22(1).

2. Elkins Act, 49 U.S.C. §§ 41–43, defines as a misdemeanor the willful failure by a common carrier to observe its tariff

petitioner submitted this question to the Commission:

> "May a common carrier subject to the Act charge or assess a shipper or receiver of freight, other than an agency or department of the Government, an amount less than that named in the tariffs published and filed by such carrier when the bill of lading contains an endorsement that the costs paid to the carrier by the shipper or receiver are to be reimbursed by the Government?"

By corrected order of July 11, 1963 the Commission stated the issue before it to be as framed in the question above and ordered that the petition be handled under modified procedure which provides for the submission of written statements of facts "sworn to by persons having knowledge thereof" in lieu of oral hearings. (49 C.F.R. 1.45–1.54). Thereafter various transportation associations, motor carriers, railroads and government agencies responded to notice of the petition as published in the Federal Register and were permitted to intervene in the proceedings. The entire case before the Commission was handled upon written affidavits and argument without benefit of oral hearings. Three intervening government agencies, Liquor Control Agencies in seventeen states and a County of another State, an association of western railroads and a single motor carrier, favoring use of the proposed endorsement, urged an affirmative answer to the question under consideration. Eastern Central and one intervening petitioner took a neutral position while thirteen interveners consisting of eight motor common carriers, two associations of motor common carriers, an association of shippers, an association of water carriers and an association of eastern railroads urged that issue be decided in the negative. After the submission of verified statements and argument by the parties, the Commission by order of January

3, 1964, assigned the matter to an examiner for the "recommendation of an appropriate order".

The examiner's recommended report and order was served March 17, 1964, in which he proposed a negative answer to the question propounded, holding:

> "Upon considering all of the evidence the Hearing Examiner finds that the prospective tariff item would be an unlawful extension of the provisions of sections 22 and 217 of the Interstate Commerce Act."

Exceptions thereto, and replies to exceptions, were filed by the parties; and Division 2's report and order, one of the three Commissioners of the Division not participating in said decision, was served October 9, 1964 (323 I.C.C. 347), wherein the report and order of the Hearing Examiner was reversed, Division 2 holding:

> "We find the question presented by the petitioner should be answered in the affirmative, subject to the qualifications expressed in this opinion." (323 I.C.C. at page 353).

At the same time it was stated that the Commission had determined the matter to be one of general transportation importance, thereby permitting further reconsideration.[3] Petitions for reconsideration were duly filed, and also replies to the petitions. The Commission denied the petitions by order of January 28, 1965 (served February 3, 1965), thus rendering the report and order of Division 2 administratively final.

Thereafter, intervening plaintiff Household Goods Carriers' Bureau petitioned for leave to file a petition to reopen the proceeding; this was denied by order of April 8, 1965 (served April 15, 1965) after replies thereto had been filed. A similar petition by plaintiff Traffic Executive Association—Eastern Railroads was also denied, by order of May 21, 1965 (served May 27, 1965). Mean-

---

rates or knowingly to offer or grant rebates, concessions, etc. in rates. Section 217 of the Interstate Commerce Act (49 U.S.C. § 317) requires motor carriers and section 306(c) thereof (49 U.S.C. § 906

(c)) water carriers, to file and observe rate tariffs.

3. 49 C.F.R. 1.101.

while the complaint to set aside the order of the Commission was filed in this court on May 25, 1965. On July 26, 1965 the United States and the Commission filed a joint answer denying the allegations of error made in the complaint. Various parties have been permitted, upon motion, to intervene as parties plaintiff while the Secretary of Agriculture had been permitted to intervene as a party defendant and has filed an answer to the complaint.

## STATUTE INVOLVED

Section 22 of the Interstate Commerce Act, 49 U.S.C. section 22, which permits common carriers by rail to carry Government traffic free or at reduced rates provides in pertinent part:

"(1) That nothing in this part shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, State, or municipal governments * * * "

Section 22 is made applicable to carriers by motor vehicle by section 217(b) of the Act, 49 U.S.C. section 317(b), and to carriers by water by section 306(c) thereof, 49 U.S.C. section 906(c).

## DISCUSSION

In construing the words in the statute "for the * * * governments" or "for the United States", the hearing examiner in effect concluded that section 22 quotations for transportation services are proper only where the title to the property is in the government during transportation. The Commission did not agree and interpreted the wording of the statute in question to mean that section 22 quotations "are applicable on transportation services which are performed for the government, so long as the *direct and entire benefit* of the special rates accrues solely to the government." (Emphasis supplied.) The Commission further noted that whether the direct and entire benefit does so accrue is a question of fact and discussed in detail various possible factual situations which could arise, stating:

" * * * A government contractor operating under a fixed price contract would not be able to use section 22 quotations. Even though the government might in fact receive the advantage of lower transportation charges through a lower contract price, the benefit would not be direct, nor necessarily total. On the other hand, a contractor working under a cost reimbursement contract, such as one calling for payment of cost-plus-fixed-fee, may claim freight charges under certain circumstances as a direct reimbursable cost. Where such a cost is both direct and allowable, under the appropriate procurement regulations, the government alone receives the benefit of any reduction and section 22 rates would be applicable. The contractor must be, so to speak, a conduit for the payment of the freight charges by the government.

"In the Armed Services Procurement Regulations, codified in 32 C.F.R., section 15.205–45 (1961) describes transportation cost which is allowable under cost-reimbursement contracts. Where the cost can be readily identified with the items involved, it may be considered direct cost; where such identification cannot be readily made, the inbound transportation cost may be charged to appropriate indirect costs accounts. If reimbursable under the contract, outbound freight charges will be treated as a direct cost.

"Indirect cost, as described in another section, 32 C.F.R. section 15.203 (1961), is that which cannot be related specifically to a particular item because it is incurred for common or joint objectives of both the contractor and the government. Since the entire benefit does not accrue solely to the government, transportation which is considered a matter of indirect cost cannot be regarded as 'for the government' so as to qualify for special rates under section 22, even if the indirect cost item is allowable and an allocable portion is in fact paid by the government.

"A subcontractor rarely has that contractual privity with the govern-

ment which would give rise to direct reimbursement of such costs as transportation charges. See, for example, Sullivan v. United States, 129 Ct.Cl. 63, 68 (1954), and General Elevator Co. v. United States, 122 Ct.Cl. 467 (1952), and compare Kern-Limerick v. Scurlock, 347 U.S. 110 [74 S.Ct. 403, 98 L.Ed. 546] (1954), in which the contract specifically made the prime contractor agent of the government. Therefore, section 22 quotations would seldom, if ever, be applicable on shipments for subcontractors." (323 I.C.C. 347, 351–352).

The tariff provisions which Eastern Central sought leave to amend restricted the application of section 22 rates to movements for which a government bill of lading was issued, or was to be issued at destination. Although recognizing that this limitation "seems to afford the carriers the maximum assurance that the special rates are properly applicable" [4] and that such "assurance is undoubtedly desirable in view of the continuing statutory obligation [5] on the carriers to collect charges based only upon the applicable rate, be it a section 22 quotation or a published tariff rate", the Commission could perceive no reason why a government bill of lading should be a condition precedent to the use of section 22 quotations and held that "neither the wording of the statute nor the apparent legislative intent to maintain the preferred position of governments in their transportation dealings [[5]] allows us to limit the scope of the section by reading in such a restriction." [Commission's footnote 5. "See Senate Report No. 410, U.S. Code Cong. and Admin.News, 85th Congress, 1st Session (1957), p. 1782; Increased Freight Rates, E., W., and S.

Territories, 1956, 300 I.C.C. 633, 669 (1957)."].

In commenting upon the proposed endorsement to commercial bills of lading then before it, the Commission stated:

"There is no special magic in any particular formulation to be added to a commercial bill of lading which will automatically guarantee the carrier that the government alone will receive the benefit of the special rate. The endorsement constitutes a circumstance which the carrier may, or may not, consider sufficient assurance. Certainly nothing prevents the carrier from requiring whatever it considers adequate to show that the transportation service sought qualifies for the special rates which it is permitted, but not required, to establish. See Rocky Mountain Carriers-Agreement, supra. Therefore, our conclusion must not be construed as definitive approval of the endorsement language quoted earlier. Indeed, we consider that any endorsement might more appropriately specify that 'the actual, total transportation cost paid to the carrier(s) by the shipper or receiver is to be directly reimbursed by the Government,' in order to emphasize that the shipper or receiver is merely acting as a conduit for a benefit accruing to the government." (323 I.C.C. 347, 352).

■ The plaintiffs and intervening plaintiffs strongly urged before the hearing examiner and before the Commission and continue to urge to this court that if the use of commercial bills of lading with an endorsement such as the one approved by the Commission, with qualifications, is permitted there is nothing to prevent any private shipper under

---

4. "The circumstances of the particular transportation determine whether the requirements of section 22 have been met. For example, when a government bill of lading is issued, the fact is established that the transportation is performed for the government and that the full cost is borne by the government, giving it the entire benefit of any reduced rate. The same is true when a commercial bill of lading is used, to be exchanged for a government bill of lading at destination. *Thus, use of a government bill of lading assures the carrier that the section 22 rates will advantage only the government.*" (323 I.C.C. 347, 350; emphasis supplied.)

5. These statutory obligations are spelled out, supra, in footnote 2 of this opinion.

contract with the Government from improperly taking advantage of section 22 reduced rates. It is pointed out that the shipments for which such reduced rates may be properly or improperly claimed, the propriety of the claim as to any given shipment depending upon the facts peculiar to that particular shipment, are of many varieties and types. For example, the shipments may be direct shipments to Government installations with the Government or a Government agency as the consignee but with the charges prepaid by the non-Government consignor. The shipments may be shipments of obviously Government intended items, such as military supplies and equipment, moving between a subcontractor and a prime contractor. The shipments may consist of raw materials consigned to a manufacturing plant producing items for the commercial market as well as for the Government. The shipments may even include shipments of household goods of employees of a corporation which manufactures articles for the commercial market as well as for the Government and which corporation may claim a right to reduced rates on the ground that it is transferring some of its employees from one place to another on work involving a Government contract, the actual, total cost of such transportation to be directly reimbursed by the Government. The plaintiffs contend that at the time that such shipments are tendered for transportation they have no possible way of determining whether the Government will *in fact* reimburse the shipper for such transportation costs. The plaintiffs' position is well summarized in the following quotation from the brief of intervening plaintiff Household Goods Carriers' Bureau, at pages 3-4:

"The answer [as to whether or not in fact the Government will sometime in the future directly and completely reimburse the party initially bearing the freight charges] will depend upon many different factors, including the precise form and language of the shipper's contract with the Government, the interpretation of that contract by the Government auditors, the determination by the Government as to whether the articles shipped comply with the contract specifications, whether the method of shipment conforms with contract specifications, and many other considerations. If, for any of these or other reasons, the Government does not ultimately reimburse the shipper in whole or in part for such transportation costs, and the shipper has received reduced rates for the shipment by reason of applying the aforesaid endorsement to the commercial bill of lading, both the carrier and the shipper will have violated section 217(b) of the Interstate Commerce Act, and the carrier will have been deprived of lawful revenue. But neither the carrier nor anyone else, except the shipper, will ever be aware of this, because neither the carrier nor the Interstate Commerce Commission has any means of following all such transactions to their ultimate disposition and settlement by the Government."

This problem of great concern to the entire transportation industry due to the vast amounts of, and the ever increasing amounts of, goods moving at reduced rates for the United States Government was posed by and presented to the Commission for consideration by virtually every party resisting the use of a commercial bill of lading with the proposed endorsement. The problem was presented both by way of argument and in a number of instances by way of the submission of a verified statement of facts.[6]

6. See: Statement of Fact and Argument of Whitfield Transportation, Inc., a motor carrier operating in Texas, New Mexico, Utah and Colorado; Statement of Fact and Argument on Behalf of United Van Lines, Inc., a motor carrier of household goods; Verified Statement of Facts and Argument on Behalf of Law Motor Freight, Inc., a motor carrier operating in New England, p. 3-6; Statement of Facts and Argument Supporting a Negative Answer to the Legal Question Stated submitted by Waterways Freight Bureau, p. 4-6; Position of Intervening Petitioner, Helm's Express, Inc., p. 1; Verified Statement of Facts and Argument on

Even the various Government agencies parties to the proceedings before the Commission through their statements submitted to the Commission made clear the practical problem facing the carriers in connection with determining the proper, and indeed the legally authorized, application of section 22 rates to transportation services performed pursuant to a commercial bill of lading with the proposed endorsement.[7] Yet nowhere in its report and order does the Commission refer to this practical problem which the carriers urged to be of great concern to the entire transportation industry. For this reason the case is hereby remanded to the Commission.

■■■ By remanding we do not mean to interpose a judgment as to the wisdom of the proposed endorsement. Congress has vested the Commission with broad authority to regulate the conduct of interstate carriers and it is neither our function nor our desire to pass on the wisdom of the Commission's solutions to the intricate problems which inevitably arise in the administration of the Act. However, the plaintiffs, carriers intimately involved in the actual transportation of goods, earnestly, forcefully and not implausibly argue that the endorsement is not practicable and its implementation entails insuperable difficulties in policing, with the danger that unscrupulous shippers will take advantage of reduced rates to which they are not entitled. Nothing in the Commission's

decision indicates that it adverted to, evaluated and rejected this argument. We cannot assume that it did so, nor can we supply the necessary underpinnings, in the form of factual findings, for such a conclusion. See Securities and Exchange Commission v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. On remand the Commission will have the opportunity to bring its expertise to bear on this question. Once the Commission has done so the scope of our review is limited to determining whether the Commission's decision is rationally supported by substantial evidence on the whole record. See Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995.

If the Commission should again authorize an amendment to Item 50, it may also wish to clarify its present holding that its conclusion "must not be construed as a definitive approval of the endorsement language quoted earlier," followed by the suggestion of an endorsement that "might more appropriately specify * * * that the shipper or receiver is merely acting as a conduit for a benefit accruing to the Government." (323 I.C.C. at page 352), in view of the conclusion that:

"We find that the question presented by the petitioner should be answered in the affirmative, subject to the qualifications expressed in this opinion."

Remanded.

Behalf of Household Goods Carriers' Bureau, representing more than 1,700 motor carriers of household goods, p. 3–5; Statement of the Traffic Executive Association—Eastern Railroads Supporting a Negative Answer, p. 11–13; Position of Intervening Petitioner U.S.A.C. Transport, Inc., p. 2–3; Statement of Position of Intervenors Browns Express, Inc., Central Freight Lines, Inc., Texas-Arizona Motor Freight, Inc., motor carriers, p. 3–5; and Argument on Behalf of the National Industrial Traffic League Supporting a Negative Answer, an organization of shippers described as "the largest organization of its kind", pp. 3 and 6–8.

See also the resumé by the hearing examiner of the positions taken and the statement of facts submitted by the in-

terveners opposing the proposed endorsement at pages 5–9 of his recommended report and order in these proceedings, served March 17, 1964.

7. For example, see: Verified statement of Defense Traffic Management Service by Gilmer B. Randolph, page 3, (recognizing that the applicability of section 22 rates depends upon the terms of the particular government contract involved); and Affidavit of Facts by Clifford G. Pulvermacher filed in support of the argument made by the Department of Agriculture, page 2 (recognizing in effect that the failure of a government supplier to comply with contract specifications will relieve the government of any obligation ultimately to reimburse the supplier for transportation costs).