**McLEAN TRUCKING COMPANY, Inc.,**
**a Corporation**

**v.**

**The UNITED STATES.**

**No. 305–64.**

United States Court of Claims.

Oct. 13, 1967.

John Guandolo, Washington, D. C., attorney of record, for plaintiff. MacDonald & McInerny, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Raymond M. Zimmet, Washington, D. C., for the Interstate Commerce Commission. Robert W. Ginnane, Gen. Counsel, and Fritz R. Kahn, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

COWEN, Chief Judge.

Plaintiff, a motor common carrier of freight, is the successor in interest of Hayes Freight Lines, Inc. Plaintiff sues to recover $4,858.27, allegedly due from defendant for the transportation of freight.

I

The facts are not in dispute. During the years 1961, 1962, and 1963, Hayes Freight Lines, Inc., in conjunction with other motor carriers, transported for the defendant eight less-than-truckload shipments of Class A or B explosives from various points in California and Arizona to various points in Maryland, Virginia, North Carolina, and Kentucky. The shipments were made under government bills of lading, and after delivery and payment of the charges originally assessed, plaintiff submitted supplemental bills to the General Accounting Office. Upon disallowance of the claims, plaintiff filed this action.

Through joint class rates between the points of origin and points of delivery of the shipments were inapplicable because the Hughes Transportation Company, which transported six of the shipments from Memphis to the points of delivery, and Hayes Freight Lines, Inc., which transported the remaining two shipments from Memphis to the points of delivery, did not participate in through rates from the origin of the shipments to the points of delivery, The parties have agreed that it is necessary to apply a combination rate and that the lowest combination rate is obtained by using the separately established rates from points of origin to Memphis, Tennessee, and from Memphis to the several delivery points. There is no issue regarding the applicable rate for the movement beyond Memphis. The sole controversy arises with respect to the charges from the points of origin to Memphis.

The applicable rates to Memphis are the class rates named in the Rocky Mountain Motor Tariff Bureau Tariff No. 21–B, MF–I.C.C. No. 117, which, in turn, is governed by Rocky Mountain Motor Tariff Bureau Tariff No. 20–C, MF–I.C.C. No. 123. The latter tariff

contains a rule in Item 932, which reads as follows:

### Minimum charge on shipments of Class A or B explosives

Except as provided in Note 1 below, the minimum charge on any shipment containing Class A or B explosives, as described in American Trucking Associations, Inc., Agent, Explosives and Dangerous Articles Tariff No. 10 MF–I.C.C. No. 11, supplements thereto or reissues thereof, moving under rates named in tariffs made subject to this tariff, will be the charge for 7,500 pounds at the LTL or AQ rate applying to the highest rated Class A or B explosive in the shipment.

Note 1:—On traffic which moves from origin to destination via any one of the carriers shown below, or via any combination of carriers shown below, the minimum charge on any shipment containing Class A or B explosives * * * moving under rates named in tariffs made subject to this tariff, will be the charge for 1,000 pounds at the LTL or AQ rate applying to the highest rated Class A or B explosive in the shipment.

The motor carriers which transported the explosives between points of origin and Memphis were among those named as subscribing to the provisions of Note 1, but the goods were carried from Memphis to the points of delivery by motor carriers who were not so named. The issue, therefore, is whether the "destination" referred to in the tariff is Memphis, in which case the correct charges to Memphis would be computed at actual weight or at a minimum weight of 1,000 pounds, or whether the "destination" is the place where, in each instance, the explosives were delivered to the consignee. In the latter event, the charges are to be computed on the 7,500-pound minimum basis. Defendant argues for the lower minimum, whereas plaintiff contends that rates based on a minimum weight of 7,500 pounds are applicable.

## II

After this suit was commenced, defendant filed a motion stating that the term "destination", as used in the field of transportation, is a word of art, and requested that the question be referred to the Interstate Commerce Commission for its determination. Plaintiff concurred and the motion was granted. Thereafter, the United States filed a petition before the Interstate Commerce Commission seeking a determination of the issue requiring a construction of the tariff. A hearing was held before a hearing examiner who determined the question in favor of the carrier and issued his report and order. On appeal, the Rates and Practices Review Board of the Commission affirmed and adopted the report of the examiner and ordered the proceedings discontinued. Subsequently, the Government's petition for reconsideration was denied by Division 2 of the Commission, acting as an appellate division, and thus the prerequisites to judicial review have been met. 49 U.S.C. § 17(9) (1964). The question is now before us on the Government's motion to enjoin, set aside, annul and suspend the Commission's order.

## III

On August 30, 1964, the Judicial Code was amended with respect to the jurisdiction and venue of actions brought to enforce, enjoin, set aside or annul orders of the Interstate Commerce Commission in judicial reference cases. 28 U.S.C. § 1336 (1964) was amended to provide that when a district court or the Court of Claims refers a question to the Interstate Commerce Commission for determination, the referring court shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, or annul the order of the Commission arising out of the referral. 28 U.S.C. § 1398 (1964) was also amended in substantially the same way. The result was to provide a more streamlined procedure for judicial review of questions that involve the primary jurisdiction of the Interstate Commerce Commission and are referred to it for a preliminary

determination. Since the statutes were amended, this is the first such case to come before the court and, in view of the conflicting contentions of the parties, we take occasion to state the procedure which should be followed.

■ Since the 1964 amendments made no changes in the substantive law, except to fix venue and jurisdiction in the referring court, the prerequisites for judicial review remain the same. Once an issue has been referred to the Commission, the matter must be prosecuted there until a final order is issued; only after administrative remedies have been exhausted may the case proceed to judgment in the court. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

■ Plaintiff argues that the words "civil action", as used in 28 U.S.C. § 1336 and 28 U.S. Co. § 1398, create a requirement that the party challenging the Commission's order institute an entirely new action by filing a separate petition against the Commission in this court and by pursuing the new action to a conclusion before the original case is reopened. Thus, plaintiff contends that defendant's use of a motion to attack the Commission's decision is a failure to comply with the law. The acceptance of plaintiff's view would require the adoption of a procedure almost as burdensome as that which the amended statutes were designed to supplant. Pointless duplication and needless expense would be entailed, because both the suspended action and the newly instituted one would be docketed in the same forum where only one final judgment is required to dispose of both suits. We cannot agree that Congress intended to cure one procedural difficulty by creating another as cumbersome as the old. A more sensible reading of the statute shows that Congress used the term "civil action" simply to distinguish it from a "criminal action" and that nothing more is to be inferred from the term. In a case in which there are already several pleadings, it would be redundant at best to require anything more of a party challenging the Commission's order than a pleading setting forth the action he requests of this court and stating specifically the grounds therefor.[1]

■ Prior to the 1964 amendments, a suit in a district court to set aside an order of the Interstate Commerce Commission in judicial reference cases was, as a matter of general practice, ordinarily filed against the United States and the Commission. When the United States brought an action to set aside an order of the Commission, that agency was customarily named as defendant in the suit. Since this was the first case brought under the new statutory pattern, the court invited the Commission to file a brief and it has done so. We think the Commission is a necessary party whenever its decision on a referred case is attacked. Therefore, the court will not entertain a motion or other action to set aside an order of the Commission unless it is made a party to the suit, duly served, and thus given an opportunity to defend its decision. In all such cases, the challenging party should follow the procedure set forth in our Rule 23. A motion under Rule 23(b) to make the Commission a party may be filed with the pleading attacking the Commission's decision, and service on the Commission shall be made as provided in Rule 23(c).

### IV

■ As previously stated, the question at issue was referred to the Commission on defendant's motion and with plaintiff's concurrence. We granted the motion because we respected the agreement of the parties that the question was one within the primary jurisdiction of the Commission. Apparently, both parties believed that the issue is not the ordinary meaning of the word "des-

---

1. Rule 96(b), as set forth in Chapter XVIII, captioned "Wunderlich Act Reviews," effective June 1, 1967, provides a general guide for the requirements of a pleading attacking the Commission's decision as well as for the response by the adverse party.

tination" but whether that word was used in its ordinary sense in the pertinent tariff. The latter is precisely the type of question which is to be determined preliminarily by the Commission. Great N. Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922); cf. Texas and Pac. Ry. Co. v. American Tie and Timber Co., 234 U. S. 138, 34 S.Ct. 885, 58 L.Ed. 1255 (1914).

## V

The Commission decided that the word "destination", as used in Note 1 of the governing tariff, is the place designated for the ultimate unloading of the shipments and, therefore, that the applicable rate on the movements from points of origin to Memphis should be based on the minimum charge for 7,500 pounds. In so concluding, the Commission found that the lower rate provided in Note 1 was available only for a shipment that moved from origin to destination via the carriers therein specified and that, since the shipments were not transported from origin to destination by such designated carriers, the minimum charge set forth in Note 1 is not applicable. The hearing examiner relied on the carrier's arguments that: (1) the bills of lading defined the term "destination" as the place of delivery to the consignee, (2) the word is defined in recognized dictionaries as the place set for the journey's end, and (3) the courts have generally held that the destination is the town, village, or city to which a shipment is made, or the place where the consignee receives the goods.

■■ Since the primary jurisdiction of the Commission has been invoked on the issue to be decided, we are reminded that the scope of our review is narrow. Unless the findings of the Commission are contrary to law, arbitrary, capricious or unsupported by substantial evidence, they may not be set aside. General Motors Corp. v. United States, 324 F.2d 604, 605 (6th Cir. 1963). As the courts have often said, the judicial function is exhausted when there is found to be a rational basis for the Commission's con-

clusions. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). After reviewing the record and weighing defendant's contentions in the light of these long established precepts, we find that there is a rational basis for the Commission's conclusions. Each government bill of lading named a military transportation officer as the consignee, and in each instance the actual place of delivery was designated on the bill of lading below the printed word "destination." The administrative interpretation of the term provides the same meaning that the average shipper would ordinarily ascribe to it.

In its brief to us and before the Commission, defendant has argued forcibly that the phrase "moving under rates made subject to this tariff" in Item 932 and Note 1 is controlling, that the phrase is self-limiting, and that the traffic must move under rates controlled by the tariff. From this premise, defendant further contends that since the shipments moved to Memphis under rates made subject to a tariff containing Item 932 and Note 1, the word "destination" in Note 1 means the destination of the rates rather than the destination of the shipments. However, the title page of Tariff 20–C, which is subject to Tariff 21–B, contains two lists showing that the ratings therein stated apply to shipments between points in named states and points in other named states. The first list includes the states in which are located the places where the shipments originated, and the second includes the states in which are located the places where the shipments were delivered. Therefore, it was theoretically possible for defendant to ship the explosives over the entire route by carriers subscribing to Note 1. The fact that such carriers were used only so far as Memphis disqualifies the shipments from the benefit of the lower rate by the terms of the tariff itself.

■ Defendant's most appealing argument is that if the Government had shipped the explosives to Memphis via

# 662

the carriers named in Note 1, unloaded the explosives there, and reshipped them to the places where delivery was made, the Government would have been entitled to the lower rate. Although the argument is persuasive, it is, in essence, a contention that the rate found to be applicable is unreasonable, and it collides with the principle that a determination of the reasonableness of the rates is within the exclusive primary jurisdiction of the Interstate Commerce Commission. United States v. Western Pac. R. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed. 2d 126 (1956). So far as we can ascertain, the issue as to whether the rate applied is reasonable was never presented to the Commission. Therefore, it is not within our competence to pass on the question. Great N. Ry. Co. v. United States, 312 F.2d 901, 156 Ct.Cl. 332, 338 (1962).

For the reasons stated above, we hold that the defendant has not sustained its burden of presenting adequate grounds for setting aside the administrative order. Plaintiff is entitled to recover freight charges on the shipments to Memphis in accordance with the decision of the Interstate Commerce Commission. Defendant's motion is denied and the case is remanded to the trial commissioner for a determination of the amount of recovery due plaintiff.