SOUTHERN PACIFIC TRANSPOR-
TATION COMPANY

v.

The UNITED STATES.

No. 155–69.

United States Court of Claims.

Oct. 23, 1974.

Martin Sterenbuch, Washington, D. C., attorney of record, for plaintiff. Cake & Sterenbuch, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before LARAMORE and DURFEE, Senior Judges, and DAVIS, Judge.

## ON PLAINTIFF'S MOTION TO REVIEW AND SET ASIDE THE DECISION AND ORDERS OF THE INTERSTATE COMMERCE COMMISSION

DAVIS, Judge:

In 1965 and 1966 plaintiff carried over its railroad a number of shipments of generators, internal combustion engines, tractors, graders, cranes, earth hauling vehicles and other similar articles, from various points in the United States to Port Hueneme, California. These shipments moved on commercial bills of lading from apparently private consignors to apparently private consignees; there was no endorsement indicating that the transportation was for the United States or that the freight charges were to be paid or reimbursed by the Government; nor did the documents otherwise show, on their face, that the transportation was for, or the charges would be borne by, the United States; but at least some of the documents did bear an overseas destination

of Viet Nam or Thailand or were marked for export. In fact, the goods shipped were acquired under cost-reimbursable government agreements which required the United States to bear the transportation costs, and the United States actually compensated the entity which paid the charges.

After the completion of the transportation and initial payment to the plaintiff on the basis that the Government was not involved, the General Accounting Office, implementing 49 U.S.C. § 66, notified the carrier that the consignee of the shipments was acting under Government cost-reimbursable contracts which obliged the United States to reimburse the charges. Because of these circumstances the GAO claimed that the proper tariff rates were those listed in a "section 22 quotation"[1] to which plaintiff had adhered. When the carrier disagreed that the section 22 quotation was applicable to these shipments, the GAO recovered the claimed refund by deduction from other funds due Southern Pacific. There is no dispute that the section 22 quotation rates are less than those billed by plaintiff.

The company then brought this action, and both parties moved for summary judgment on the issue of whether the section 22 quotation comes into play. After oral argument, the court issued an order (Feb. 26, 1971, amended, March 5, 1971) in effect finding the above facts,[2] suspending action on the cross-motions for judgment, and referring to the Interstate Commerce Commission (*see* United States v. Western Pacific R.R., 352 U.S. 59, 62–70, 77 S.Ct. 161, 1 L. Ed.2d 126 (1956)) "the question of whether the Section 22 quotation involved in the case properly applies, in

---

1. Section 22 quotations are special reduced rates which carriers may, often do, but are not required to, offer under section 22 of the Interstate Commerce Act, 49 U.S.C. § 22 (1970), on traffic moving for the account of the United States (among others). The pertinent part of section 22 is: "Nothing in this chapter shall prevent the carriage, storage, or handling of property free or at re-

duced rates for the United States, State, or municipal governments * * * ."

2. Our recital of the facts also takes account of other undisputed parts of the record previously before the court on the motions for summary judgment, as well as the record now before us.

the circumstances stated above, to the shipments on which plaintiff sues."

Pursuant to this order, plaintiff filed with the Commission a petition for a declaratory order, to which the Department of Justice responded. The Commission's administrative law judge (then called "hearing examiner") issued a report and order finding that the section 22 quotation governed. On exceptions by the carrier, the Commission's Review Board No. 4 affirmed this report and order. Plaintiff filed a petition for reconsideration which was taken up and denied by the Commission's Division 2.[3] With this step, plaintiff exhausted its Commission remedy.

■ Subsection "b" of Section 1336 of Title 28 (enacted in 1964) provides that when "the Court of Claims refers a question or issue to the Interstate Commerce Commission for determination," this court alone "shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral." In McLean Trucking Co. v. United States, 387 F.2d 657, 660, 181 Ct.Cl. 170, 176–177 (1967), we ruled that this legislation does not call for the institution of a formal new "civil action" by the party seeking review, but only that he file "a pleading setting forth the action he requests of this court and stating specifically the grounds therefor." *See also,* Seaboard Airline R.R. v. United States, 387 F.2d 651, 655, 181 Ct.Cl. 719, 727 (1967). Plaintiff has complied with this requirement by filing a motion to review and set aside the Commission's decision and orders (with a supporting brief). There is no procedural obstacle to our considering the administrative ruling on its merits.[4]

Before the present suit was begun in 1969, the Commission had had before it a proceeding to determine a particular method by which section 22 quotations could apply to shipments moving on commercial bills of lading. In Interpretation of Government Rate Tariff for Eastern Motor Carriers Association, 323 I.C.C. 347 (1964), a group of motor carriers asked whether section 22 coverage could be extended to shipments moving on commercial bills bearing an endorsement stating that the costs paid to the carrier by the shipper or receiver are to be reimbursed by the Government. The Commission's answer was affirmative, if the Government totally, actually, and directly received the benefit of the reduced section 22 rate. *Id.* at 352. On appeal by carrier interests, the District Court remanded to the Commission to consider practical problems urged by the complainants as following from the adoption of the Commission's rule. Middle Atlantic Conf. National Motor Freight Traffic Ass'n v. United States, 265 F.Supp. 448 (D.Md.1967). On remand, the Commission reaffirmed and supplemented its previous decision by setting forth very precise endorsement language for section 22 quotation shipments moving on commercial bills. 332 I.C.C. 161 (1968).

Southern Pacific's position is that the shipments at issue in this case do not qualify for section 22 treatment under either the Commission's 1964 or its 1968 ruling since the commercial bills of lading contained no endorsement, in any form, that the transportation was for, or the charges would be paid by, the United States. In the referral proceeding the Commission ruled, however, that the 1968 requirements were guidelines implementing the basic congressional pur-

---

3. Plaintiff's request for oral argument was rejected.

4. In *McLean Trucking Co., supra,* 387 F.2d at 660, 181 Ct.Cl. at 177, we also held that the Commission is a necessary party "whenever its decision on a referred case is attacked," and said that we "will not entertain a motion or other action to set aside an order of the Commission unless it is made a party to the suit, duly served, and thus given an opportunity to defend its decision." This was done in the present case, but the Commission has chosen not to file anything in support of its decision.

pose and, as such, were not to be applied retroactively.

▮ In this court, the carrier does not urge error in this refusal to apply the specific 1968 requirements, with their precise wording, to the shipments transported in 1965–1966. Rather, plaintiff's complaint is that at no level did the Commission treat Southern Pacific's underlying contention that in 1965 and 1966 (the years involved here) goods moving under commercial bills of lading were disentitled to section 22 rates unless (unlike the shipments involved here) they showed, in some way, on the face of the documents that the transportation was for the United States or that the charges would be paid by the Government. Plaintiff also considers it clear that this was minimal section 22 law until the 1964 and 1968 I.C.C. orders tightened up the requirements by calling for a particular type of endorsement.

The carrier's misconceptions, as we see them, are two—first, that the Commission failed in plaintiff's proceeding to address itself to this point, and, second, that prior to 1968 section 22 law was as plaintiff now asserts it to have been. On the first issue we do not agree that the I.C.C. failed to consider the pre-1968 law. The report of the administrative law judge does not stop with a rejection of retroactive application for the specific 1968 requirements. He added expressly that "there is no question that but for an endorsement of governmental responsibility, the transportation in question qualified for section 22 rate handling."[5] This strongly implies (especially when taken with the report's prior discussion of retroactivity) that, before the precise endorsement requirement became effective in 1968, section 22 coverage could be extended to certain types of shipments which bore no such endorsement. It seems clear

that the Commission's basic postulate in the referral proceeding was that the *core qualification for the section 22 privilege* is that the Government directly bear the transportation cost and obtain the benefit of the reduced rate, and that the endorsement requirements were simply administrative guidelines—implementing the central statutory purpose "as a practical means of insuring that section 22 rate quotations would be properly applied and that potential abuses and possible violations of law would not occur"—which had to be observed once promulgated, but only after their adoption. In other words, the Commission's view, as expressed in plaintiff's case, was that, prior to 1968, a section 22 quotation could properly apply to a shipment which was actually and directly for the Government's account even though the Government's participation was not shown or indicated in the documentation.

Is this a tenable reading of section 22 law prior to 1968? Plaintiff insists not, citing the following statement in Rocky Mountain Carrier-Agreement, 314 I.C.C. 279, 280 (1961):

Section 22 quotations are voluntary tenders by carriers for application only on shipments for the United States Government, moving under Government bills of lading. They are not applicable on shipments moving under commercial bills of lading on which the Government may have arranged to bear the transportation costs.

However, this was not a generalization applicable to *all* section 22 quotations, but merely a description of the particular class of quotations involved in that case, *i. e.* in which the tariff expressly required the shipment to move on a government bill of lading.[6] Here, in contrast, the specific section 22 quotation

5. This statement was adopted by the Review Board when it held that "the statement of facts, conclusions, and findings in the report, being proper and correct in all material respects, should be, and they are hereby, affirmed and adopted as our own." Nothing

in the summary order of Division 2 denying reconsideration suggests that it had any other view.

6. In Interpretation of Government Rate Tariff for Eastern Central Motor Carriers As-

(unlike its predecessor) embodied no requirement of any kind that, in order to obtain the benefit of the quotation, the bill of lading contain an endorsement, or show on its face, that transportation would be for the United States or that the transportation charges would be paid by the United States.[7]

Nor is the 1964 *Eastern Motor Carriers Association* case, 323 I.C.C. 347, *supra*, necessarily to be viewed as a holding contrary to the Commission's later position on the referral in the present case. The 1964 report is not wholly clear—that is a main reason why we referred the matter to the I.C.C.—but it is quite permissible to read it as deciding that the requirement of an endorsement would be proper if the carrier wanted to use one for its own protection, but that, in the absence of such a requirement, a section 22 quotation could cover any shipment in which the Government was shown to be in fact the direct and entire beneficiary of the special rate.

There is much in the 1964 report to support that reading. The Commission, for instance, concluded "that section 22 quotations are applicable on transportation services which are performed for the government [footnote omitted], so long as the direct and entire benefit of the special rates accrues solely to the government. Whether it does so accrue is a question of fact." 323 I.C.C. at 350. Then the Commission added: "The circumstances of the particular transportation determine whether the requirements of section 22 have been met". *Ibid.* In that connection, the report stresses the carrier's power to require "whatever it considers adequate to show that the transportation service sought qualifies for the special rates which it is permitted, but not required, to establish." 323 I.C.C. at 352. And the opinion ends by pointing to the advantages of the carrier's insisting on a government bill of lading, but saying that "neither the wording of the statute nor the apparent legislative intent to maintain the preferred position of governments in their transportation dealings [footnote omitted] allows us to limit the scope of the section by reading in such a restriction." *Ibid.* All this, and more, is consistent with the view that, although the carrier can take steps, if it wishes, to limit section 22 coverage to particular forms of shipments, it need not do so, and where it fails to insist on such measures the privilege applies to all shipments "for the United States," *i. e.* in which the Government is shown to be the direct beneficiary of the reduction. This is a rational and acceptable appraisal by the Commission of section 22 law prior to the effectiveness of the specific new 1968 requirements. As such, we can and do confirm it as an appropriate interpretation which conforms to the broad language of the statute. *See* note 1, *supra*.

We do not, therefore, concur with plaintiff either that the Commission failed to address itself to the precise issue or to dispose of that question adequately and understandably, or that it incorrectly interpreted the pre-1968 law of section 22. On the contrary, we are satisfied the orders and decision under review (1) had a rational basis in the record, the statute, and the Commission's prior decisions, (2) were neither arbitrary nor capricious, and (3) were not contrary to law. *See* McLean Trucking Co. v. United States, 387 F.2d 657, 661, 181 Ct.Cl. 170, 178 (1967); Seaboard Airline R.R. v. United States, 387 F.2d 651, 656, 181 Ct.Cl. 719, 727 (1967).

Plaintiff's motion to review and set aside the decision and orders of the Interstate Commerce Commission is denied; instead, the decision and orders

---

ciation, 323 I.C.C. 347, 350 (1964), the Commission said that in the *Rocky Mountain Carriers—Agreement* case "a carriers' agreement defined and somewhat narrowed the application of section 22 quotations."

7. This was one of our findings in the order of February 26, 1971, referring this case to the I.C.C.

are accepted and confirmed. Defendant has not asked for the entry of judgment by us, but that the case be sent back to the trial judge. Accordingly, the case is remanded to the trial division for further proceedings consistent with this opinion.