**KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant,**

v.

**GREAT LAKES CARBON CORPORATION, Appellee.**

No. 79–1075.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1980.

Decided June 16, 1980.

Ross, Circuit Judge, filed a concurring opinion.

McMillian, Circuit Judge, filed a dissenting opinion.

Bright, Circuit Judge, joined in Circuit Judge McMillian's dissent and filed opinion in which Heaney, Circuit Judge, joined.

Robert K. Dreiling, Kansas City, Mo., for appellant; John P. Emde, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., on brief.

Dickinson R. Loos, Ballard & Loos, Washington, D.C., for appellee; G. Carroll Stribling and W. W. Dalton, St. Louis, Mo., on brief.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges, En banc.

LAY, Chief Judge.

In an earlier decision this court overturned the district court's denial of Kansas City Southern Railway Company's (Railway Co.), motion to set aside a judgment under Rule 60(b)(4) of the Federal Rules of Civil Procedure. *Kansas City Southern Railway v. Great Lakes Carbon Corp.*, September 24, 1979. A motion for rehearing was granted, and this decision follows argument to the court en banc.

The Railway Co. originally sued Great Lakes Carbon Corporation, (GLC), for additional freight charges, claiming it had undercharged GLC because a higher, specific commodity rate should apply to petroleum coke that GLC shipped. GLC urged a lower freight-all-kinds rate applied. It also counterclaimed for overcharges on another shipment. On the parties' joint motion, the district court referred interpretation of tariff items and their reasonableness to the Interstate Commerce Commission, (ICC), and held the lawsuit in abeyance. The ICC affirmed an administrative law judge's decision that generally sustained the Railway Co.'s tariff interpretation. However, it held it would be unjust and unreasonable for the Railway Co. to collect the full tariff for the shipment upon which its complaint was based. Under the ICC decision, the Railway Co. would have recovered a reduced amount and GLC would not have recovered anything on its counterclaim. Each party then filed for summary judgment in the district court. The court entered judgment for the Railway Co. on its complaint for $29,898.32 plus interest, in accord with the ICC decision. However, the court held it was not bound by the ICC decision, and therefore granted GLC's motion for summary judgment on its counterclaim, entering judgment on its behalf for $129,026.47 plus interest.

The Railway Co. did not appeal within 30 days as required by Rule 4(a) of the Federal

Rules of Appellate Procedure. After its motion for an extension of time was denied, it attempted to resurrect a judgment for appeal by petitioning this court for a writ of mandamus that would order the district court to rule on its motion for summary judgment. We dismissed the petition, stating that the Railway Co.'s motion for summary judgment as to GLC's counterclaim had been ruled upon and we viewed the petition as an attempt to file an untimely appeal. *Kansas City Southern Railway v. Wangelin*, 582 F.2d 1288 (8th Cir. 1978) (*mem.*).

The Railway Co. then filed a motion in district court, asserting that under Rule 60(b)(4) of the Federal Rules of Civil Procedure the judgment should be set aside as void. It argued the district court lacked subject matter jurisdiction because it did not follow the procedure set forth in chapter 157 of title 28, sections 2321–23, for review of an ICC order, namely joinder of the United States as a defendant. 28 U.S.C. § 2322. The district court denied relief, stating it had considered the basic issues raised in its earlier opinion, from which no appeal had been taken. The Railway Co. appealed, and a panel of this court reversed the district court, holding *inter alia*, that the original judgment was void and could be set aside under Rule 60(b)(4). The court acting en banc now vacates that decision and enters judgment affirming the district court.

In this appeal we assume, without deciding, that under the jurisdictional facts presented the United States was required to be joined as a party defendant pursuant to 28 U.S.C. § 2322 once GLC sought review of the ICC decision by motion for summary judgment. The fundamental question presented here is whether Rule 60(b)(4)[1] may serve as the procedural vehicle to attack the judgment on the ground that it is a nullity because of the absence of the United States.

■ In *Schwartz v. Bowman*, 244 F.Supp. 51, 65–69 (S.D.N.Y.1965), *aff'd sub nom. Annenberg v. Alleghany Corp.*, 360 F.2d 211 (2d Cir.) (per curiam), *cert. denied*, 385 U.S. 921, 87 S.Ct. 230, 17 L.Ed.2d 145 (1966), the court held an ICC order could not be attacked indirectly under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq.; it held chapter 157 of title 28, the Urgent Deficiencies Act, is the exclusive method for enforcement or review of ICC orders. As the claim had not been brought under the Urgent Deficiencies Act and none of its procedural requirements had been met, including joinder of the United States, the court held it lacked jurisdiction. This holding only serves to obscure the question presented in this appeal.[2] As-

---

1. Fed.R.Civ.P. 60(b)(4) reads as follows:

    (b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; . . . .

2. The court did not hold that the United States was an indispensable party, nor that its absence alone deprived the court of jurisdiction.

    Even if the United States is deemed an indispensable party, its absence may not be a jurisdictional defect. Some cases have used language indicating dismissal for nonjoinder of an indispensable party is dismissal for lack of jurisdiction. *See, e.g., Agrashell, Inc. v. Hammons Prods. Co.*, 352 F.2d 443, 447 (8th Cir. 1965). The weight of authority is against this characterization. *See, e.g., Mallow v. Hinde*, 25 U.S. (12 Wheat.) 193, 196, 6 L.Ed. 599 (1827); *Clarkson Co. v. Shaheen*, 544 F.2d 624, 628 (2d Cir. 1976); *Tryforos v. Icarian Dev.*

*Co.*, 518 F.2d 1258, 1265 n.26 (7th Cir. 1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976); *Moore v. Knowles*, 482 F.2d 1069, 1075 (5th Cir. 1973); *Warner v. First Nat. Bank*, 236 F.2d 853, 857 (8th Cir.), *cert. denied*, 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162 (1956); *Dyer v. Stauffer*, 19 F.2d 922 (6th Cir.), *cert. denied*, 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421 (1927); *Agrashell Inc. v. Composition Materials Co.*, 40 F.R.D. 395, 397 (S.D.N.Y. 1966); 7 C. Wright & A. Miller, Federal Practice and Procedure § 1611 at 115–17, 121 (1972); 3A Moore's Federal Practice ¶ 19.04[2] & ¶ 19.19 at 345 (2d ed. 1979). These authorities rely upon the history of the indispensable party doctrine in equity and the emphasis on equitable considerations in Fed.R.Civ.P. 19. This reasoning may be less persuasive when the joinder of party requirement is imposed by a statutory grant of jurisdiction. *See Noland v. United States Civil Service Comm'n*, 544 F.2d 333, 334 (8th Cir. 1976).

suming the district court erred here in finding jurisdiction despite the absence of the United States,[3] the question upon which relief hinges is whether that error, never presented on appeal from the judgment, may nevertheless be corrected in a Rule 60(b)(4) proceeding on the ground that it renders the judgment void. We conclude that the judgment is not void within the meaning of Rule 60(b)(4), and any jurisdictional defect caused by nonjoinder may not now be challenged.[4]

■ Absence of subject matter jurisdiction *may*, in certain cases, render a judgment void. *See e.g., Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). However, this occurs only where there is a plain usurpation of power, when a court wrongfully extends its jurisdiction beyond the scope of its authority. *Stoll v. Gottlieb*, 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); *see Coalition of Black Leadership v. Cianci*, 570 F.2d 12, 15 (1st Cir. 1978) (quoting *Lubben v. Selective Service System*, 453 F.2d 645, 649 (1st Cir. 1972)); *Ben Sager Chemicals v. E. Targosz & Co.*, 560 F.2d 805, 812 (7th Cir. 1977); 7 Moore's Federal Practice ¶ 60.25[2] at 302–3 (2d ed. 1979). Stated another way, such plain usurpation of power occurs when there is a "total want of jurisdiction" as distinguished from "an error in the exercise of jurisdiction." *Lubben v. Selective Service System*,

453 F.2d at 649. Since federal courts have "jurisdiction to determine jurisdiction," that is, "power to interpret the language of the jurisdictional instrument and its application to an issue by the court," *Stoll v. Gottlieb*, 305 U.S. at 171, 59 S.Ct. at 137, error in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want of jurisdiction. Such an erroneous interpretation does not render the judgment a complete nullity. *See Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 376–77, 60 S.Ct. 317, 319–320, 84 L.Ed. 329 (1940); *Moore's, supra* ¶ 60.-25[2], at 296–97. A void judgment, as opposed to an erroneous one, is one which from its inception was legally ineffective. *See Williams v. North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *Jordan v. Gilligan*, 500 F.2d 701, 710 (6th Cir. 1974), *cert. denied*, 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975); *Lubben v. Selective Service System*, 453 F.2d at 649; 7 Moore's, *supra* ¶ 60.25[2].[5]

In the present case, even assuming the district court erred in construing its statutory grant of authority by not joining the United States, we hold such jurisdictional error does not render the judgment void within the meaning of Rule 60(b)(4).

We reach this conclusion because the court was vested with power to deal with this type of case and had acquired jurisdic-

---

3. In granting relief, the district court not only had to implicitly decide whether the United States was a necessary or indispensable party under 28 U.S.C. §§ 2321–23, but also whether the ICC order was in effect one for payment of money, which would be statutorily exempted from the requirement of joinder of the United States, 28 U.S.C. § 2321(b), and whether joinder was not necessary because the ICC order was advisory only.

We note that the statutory exemption from 28 U.S.C. §§ 2321–23 procedures, section 2321(b), does not encompass GLC's motion for summary judgment on its counterclaim. GLC sought to avoid the effect of the ICC order, and section 2321(b) applies only to actions brought in district court to *enforce* an ICC payment order.

4. It is basic that Fed.R.Civ.P. 60(b) is not a substitute for appeal. *Horace v. St. Louis S.W. R.R.*, 489 F.2d 632, 633 (8th Cir. 1974). If a

judgment is not void, but rather rests upon an erroneous jurisdictional determination, Rule 60(b)(4) is not properly invoked to extend time for appeal that has already expired. *See id.; Hoffman v. Celebrezze*, 405 F.2d 833, 837 (8th Cir. 1969).

5. The concept of a void judgment is extremely limited. *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 225 (10th Cir. 1979); *Coalition of Black Leadership v. Cianci*, 570 F.2d 12, 15 (1st Cir. 1978) (quoting *Lubben v. Selective Service System*, 453 F.2d 645, 649 (1st Cir. 1972)); *Ben Sager Chemicals v. E. Targosz & Co.*, 560 F.2d 805, 812 (7th Cir. 1977). Professor Moore indicates the concept is so narrowly restricted that, although seemingly incongruous, a federal court judgment is almost never void because of lack of federal subject matter jurisdiction. *See* 7 Moore's, *supra* ¶ 60.25[2], at 305–06.

tion over the parties before it.[6] It is clear that the district court had original jurisdiction to decide GLC's and the Railway Co.'s claims under 28 U.S.C. § 1337(a); it also had jurisdiction to review the ICC order entered upon referral under 28 U.S.C. § 1336(b).[7] It had jurisdiction over the general subject matter and accordingly could decide whether the United States should be joined and whether its nonjoinder was a jurisdictional defect. Even assuming the district court erred, the error has no bearing on its power to decide those issues.

The district court implicitly decided whether joinder of the United States, a prerequisite for review under 28 U.S.C. §§ 2321(a), 2342, was also required for it to review an order under 28 U.S.C. § 1336(b). With jurisdiction over the type of case and over the parties, the court could enter a judgment for money damages. In doing so, it could determine whether it had jurisdiction to entertain the parties' motions for summary judgment and for this purpose construe and apply the statutes under which it was requested to grant relief. An erroneous decision on the interpretation and applicability of sections 1336(b) and 2322 would not deprive it of power to decide. As the Supreme Court has stated:

> Whatever the contention as to jurisdiction may be, whether it is that the boundaries of a valid statute have been transgressed, or that the statute itself is invalid, the question of jurisdiction is still one for judicial determination.

*Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 377, 60 S.Ct. 317, 320, 84 L.Ed.2d 329 (1940).

Under the circumstances, the judgment may not be vacated under Rule 60(b)(4). *Marshall v. Board of Education*, 575 F.2d 417, 422 (3rd Cir. 1978); *Coalition of Black Leadership v. Cianci*, 570 F.2d at 15–16 (by implication); *Ben Sager Chemicals v. E. Targosz & Co.*, 560 F.2d at 812; *cf. Jackson v. Irving Trust Co.*, 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297 (1941) (motion to set aside, prior to promulgation of Rule 60(b)(4)).

Competing policies are at stake in setting aside a federal court judgment as void for lack of subject matter jurisdiction: observation of limits on federal jurisdiction and need for judgments that are final. However, when the challenge is to an erroneous interpretation of a statutory grant of jurisdiction and the judgment is not appealed, thus becoming final, the policy favoring certainty in judicial resolution of controversies prevails.

The panel opinion is ordered vacated and the district court judgment affirmed.

ROSS, Circuit Judge, concurring.

I concur in the majority opinion not only for the reasons stated therein, but also for

---

**6.** *See, e.g., Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (federal statute that was basis for decree subsequently ruled unconstitutional, nevertheless court has jurisdiction over parties and could pass implicitly on its jurisdiction over the claim or statute's constitutionality, even if its holding were erroneous); *Stoll v. Gottlieb,* 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938) (no jurisdiction in federal bankruptcy court over subject matter of order, court with jurisdiction of parties nevertheless could erroneously decide there was); *Marshall v. Board of Educ.,* 575 F.2d 417, 422–23 (3d Cir. 1978) (application of statute to certain defendants later held to be unconstitutional, nevertheless judgment was not void since the court had jurisdiction to erroneously pass on the issue); 7 Moore's, *supra* ¶ 60.25[2], at 302 (2d ed. 1979).

Often determination of subject matter jurisdiction rests upon a finding of jurisdictional fact, rather than, as in this case, construing a statutory grant of jurisdiction. When facts must be proven before a court will exercise its jurisdiction, voidness often turns upon the distinction between essential jurisdictional facts such as service of process or location of the *res,* and quasi-jurisdictional facts such as diversity of citizenship or amount in controversy. *See Noble v. Union River Logging R.R.,* 147 U.S. 165, 173–74, 13 S.Ct. 271, 273, 37 L.Ed. 123 (1893); *see, e.g., Lubben v. Selective Service System,* 453 F.2d 645, 649 (1st Cir. 1972); *Independence Mortgage Trust v. White,* 446 F.Supp. 120 (D.Or.1978). Federal subject matter jurisdiction turns upon findings of quasi-jurisdictional facts. 7 Moore's, *supra* ¶ 60.-25[2], at 307 n.59.

**7.** This latter jurisdictional basis assumes, although we do not decide the issue here, that the district court was reviewing an ICC order, rather than acting in the realm of its own original jurisdiction with the benefit of an ICC advisory opinion.

an additional reason. In my opinion the United States was not an indispensable party to the counterclaim portion of the case under 28 U.S.C. §§ 2321–23, and therefore there was no jurisdictional defect as indicated by the panel decision.

The counterclaim was not, as required by section 2321, "a proceeding to enjoin or suspend * * * a rule, regulation or order of the Interstate Commerce Commission" or "an action to enforce * * * any order of the Interstate Commerce Commission." Rather it was an action "for the payment of money" which is specifically exempted from the provisions of section 2321. If section 2321 is not involved, then by its terms section 2322 is not involved either and it was not necessary to join the United States as a party. I believe that 28 U.S.C. §§ 2321–23 was meant to apply to appeals to our court from an order of the ICC, not to appeals to our court from a district court case involving an action "for the payment of money."

McMILLIAN, Circuit Judge, dissenting.

After carefully considering the majority opinion and the concurring opinion, I continue to adhere to the general analysis set forth in the panel decision and therefore dissent.

To the extent relief under Rule 60(b)(4) enables a party to evade the doctrine of finality of judgments and to in effect appeal indirectly from a final judgment, I think this is the function of Rule 60(b)(4). In my view, the judgment of the district court is void for lack of subject matter jurisdiction because, as is apparent from the face of the record, the United States was not a party to the proceedings below. In the present case, the failure to join the United States is a "fatal" jurisdictional defect. *See Schwartz v. Bowman*, 244 F.Supp. 51, 69 (S.D.N.Y.1965), *aff'd sub nom. Annenberg v. Alleghany Corp.*, 360 F.2d 211 (2d Cir.) (per curiam), *cert. denied*, 385 U.S. 921, 87 S.Ct. 230, 17 L.Ed.2d 145 (1966), *citing Lambert Run Coal Co. v. Baltimore & Ohio R.R.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). The United States should have been made a party because the action was a direct review proceeding to set aside or suspend an order of the Interstate Commerce Commission (ICC) under § 17(10)[1] of the Interstate

---

1. 49 U.S.C. § 17(10) provides:
   Judicial relief from decisions, etc., upon denial or other disposition of application for rehearing etc.
   When an application for rehearing, reargument, or reconsideration of any decision, order, or requirement of a division, an individual Commission, or a board with respect to any matter or referred to him or it shall have been made and shall have been denied, or after rehearing, reargument, or reconsideration otherwise disposed of, by the Commission or an appellate division, a suit to enforce, enjoin, suspend, or set aside such a decision, order, or requirement, in whole or in part, may be brought in a court of the United States under those provisions of law applicable in the case of suits to enforce, enjoin, suspend, or set aside orders of the Commission, but not otherwise.
   This section was formerly numbered § 17(9) and was added to the Interstate Commerce Act in 1940 by the Transportation Act of 1940, ch. 722, § 12, 54 Stat. 916. The Supreme Court characterized this section as "basically a provision requiring exhaustion of administrative remedies prior to resort to the courts." *ICC v. Atlantic Coast Line R.R., infra*, 383 U.S. 576 at 583 n. 2, 86 S.Ct. 1000 at 1006, 16 L.Ed.2d 109.

In 1976 this section was renumbered and a new § 17(9) was added providing new administrative hearing and review procedures. Act of Feb. 5, 1976, Pub.L. No. 94–210, § 303(a), 90 Stat. 48. In the Revised Interstate Commerce Act (*see* note 2 *infra*) § 17(10) is now § 10325, which provides:
   Judicial review—nonrail proceedings
   A civil action to enforce, enjoin, suspend, or set aside an action of the Interstate Commerce Commission taken by a division, individual Commissioner, employee board, or employee delegated to act under section 10305 of this title may be started in a court of the United States only—
   (1) on denial of an application for rehearing, reargument, or reconsideration; or
   (2) if the application is granted, after a rehearing, reargument, reconsideration or other disposition by the Commission or an appellate division under section 10323 of this title.
49 U.S.C. § 10325. New § 17(9) (added in 1976) is now 49 U.S.C. § 10327.
For clarity, I shall refer to a former § 17(9) action (new § 17(10) and now codified at 49 U.S.C. § 10325) as a direct review proceeding and a § 16(2) action (now codified at 49 U.S.C. § 11705) as an enforcement action.

Commerce Act, 49 U.S.C. § 17(10), as revised and codified [2] at 49 U.S.C. § 10325, and not an action to enforce a reparation award under § 16(2) [3] of the Act, 49 U.S.C. § 16(2), as revised and codified at 49 U.S.C. § 11705. *See ICC v. Atlantic Coast Line R.R.*, 383 U.S. 576, 579–89, 602–06, 86 S.Ct. 1000, 1003–08, 1015–18, 16 L.Ed.2d 109 (1966) (hereinafter *Atlantic*).

As a preliminary matter, I note that the district court may not have had jurisdiction for another reason, that is, failure to exhaust administrative remedies. It appears from the record that neither the shipper (GLC) nor the carrier (KCS) filed a petition for reconsideration before the ICC. Denial or other disposition of a timely petition for reconsideration may well be a jurisdictional prerequisite to judicial review in a direct review proceeding. "Section 17(9) [renumbered as § 17(10), recodified as § 10325] provides that after an application for rehearing, reargument, or reconsideration has been denied or otherwise disposed of, a

suit may be brought to enforce, enjoin, suspend, or set aside the Commission decision, order, or requirement." *Atlantic, supra,* 383 U.S. at 582–83, 86 S.Ct. at 1005 (footnote omitted); *see United States v. Southern Ry.*, 364 F.2d 86, 92–93 (5th Cir. 1966), *cert. denied*, 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967); *Southern Ry. v. United States*, 412 F.Supp. 1122, 1134–35 & n. 31 (D.D.C.1976); *but see Resort Bus Lines, Inc. v. ICC*, 264 F.Supp. 742, 745 & n. 6 (S.D.N.Y.1967). New § 17(9) suggests, however, that a petition for reconsideration may not be necessary, at least in rail carrier proceedings,[4] because petitions for reconsideration are essentially discretionary and based upon allegations of material error, new evidence, or substantially changed circumstances, 49 U.S.C. § 17(9)(g) (now revised and recodified at 49 U.S.C. § 10327(g)). *See ICC General Rules of Practice, 49 C.F.R. § 1100.-98 (Rail appellate procedures, Rule 98) (1979) (also reprinted in 49 U.S.C.A. Appendix).

2. The Interstate Commerce Act was revised and recodified by the Act of Oct. 17, 1978, Pub.L. No. 95–473, 92 Stat. 1337. The legislative history clearly indicates that the revision and recodification was not intended to make any substantive changes but only to modernize some of the Act's archaic language. *E. g., Chicago & N. W. Transp. Co. v. Atchison, T. & S. F. Ry.*, 609 F.2d 1221, 1222 n. 1 (7th Cir. 1979), *citing* H.R.Rep. No. 95–1395, 95th Cong., 2d Sess. 1, 4, 9–10, *reprinted in* [1978] U.S. Code Cong. & Admin.News, pp. 3009, 3013, 3018.

3. 49 U.S.C. § 16(2) (now revised and codified at 49 U.S.C. § 11705) provides:

Proceedings in courts to enforce orders; costs; attorney's fees. If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any state court of general jurisdiction having jurisdiction of the parties, a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such

suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, and except that the plaintiff shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the plaintiff shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit.

4. 49 U.S.C. § 17(9)(h) (now revised and codified at 49 U.S.C. § 10327(i)) provides:

Notwithstanding any other provision of this Act, any decision, order, or requirement of the Commission, or of a duly designated division thereof, shall be final on the date on which it is served. A civil action to enforce, enjoin, suspend, or set aside such a decision order, or requirement, in whole or in part, may be brought after such date in a court of the United States pursuant to the provisions of law which are applicable to suits to enforce, enjoin, suspend, or set aside orders of the Commission.

49 U.S.C. § 10327(i) provides:

Notwithstanding this subtitle, an action of the Commission under this section and an action of a designated division under subsection (c) of this section is final on the date on which it is served, and a civil action to enforce, enjoin, suspend, or set aside the action may be filed after that date.

I agree that the district court was the appropriate court in which to review the order of the ICC at issue. The district court as the referring court has exclusive jurisdiction to review ICC orders from referrals under the primary jurisdiction doctrine. 28 U.S.C. § 1336(b); *see, e. g., Atlantic, supra,* 383 U.S. at 580, 86 S.Ct. at 1004; *Southern Pacific Transportation Co. v. United States,* 205 Ct.Cl. 451, 505 F.2d 1252, 1254–55 (1974); *Keller Industries, Inc. v. United States,* 449 F.2d 163, 166–67 (5th Cir. 1971); *McLean Trucking Co. v. United States,* 181 Ct.Cl. 170, 387 F.2d 657, 659–61 (1967); *see also* S.Rep. No. 1394, 88th Cong., 2d Sess. 2 *reprinted in* [1964] U.S.Code Cong. & Admin.News, p. 3235. *Compare Pennsylvania R.R. v. United States,* 363 U.S. 202, 205, 80 S.Ct. 1131, 1133, 4 L.Ed.2d 1165 (1960) (the holding in this case prompted the amendment of § 1336). The action was initially filed in district court by the carrier to recover undercharges; the shipper filed a counterclaim for overcharges. Because the action raised questions within the primary jurisdiction of the ICC, the district court correctly referred the issues to the ICC. *E. g., United States v. Western Pacific R.R.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956). "When that occurs, the court ordering the reference of such issues to the Commission has exclusive jurisdiction of any civil action to enforce, enjoin, suspend, set aside, or annul a Commission order arising out of the referral . . . ." *Atlantic, supra,* 383 U.S. at 580, 86 S.Ct. at 1004. In addition, as noted by the concurring opinion, the ICC order at issue was basically an order for the payment of money and as such subject to judicial review by the district court. 28 U.S.C. § 1336(a);[5] *United States v. ICC,* 337 U.S. 426, 442, 69 S.Ct. 1410, 1419, 93 L.Ed. 1451 (1949); *Aluminum Co. of America v. United States,* 553 F.2d 1268, 1269–70 (D.C.Cir. 1977) (per curiam).

In my view, however, the shipper's motion for summary judgment, which was granted by the district court, was either an action to set aside the ICC order finding that the higher specific commodity rates, as modified by the ICC, were applicable to the shipments at issue or an action challenging the adequacy of the reparations award (to the extent the carrier recovered less than it demanded). In either case, judicial review was available only in a direct review proceeding (under old § 17(9) or new § 17(10) of the Act), and not in an action for enforcement under § 16(2). In the absence of a reparations award, there is nothing upon which to base an enforcement action, *see Atlantic, supra,* 383 U.S. at 587, 86 S.Ct. at 1007; *United States v. ICC, supra,* 337 U.S. at 439–41, 69 S.Ct. at 1417–18, and a shipper cannot challenge the adequacy of a reparations award in an enforcement action, *see Atlantic, supra,* 383 U.S. at 587, 86 S.Ct. at 1007, *citing Baltimore & Ohio R.R. v. Brady,* 288 U.S. 448, 457–58, 53 S.Ct. 441, 443, 77 L.Ed. 888 (1933); *D. L. Piazza Co. v. West Coast Line,* 210 F.2d 947, 949 (2d Cir.), *cert. denied,* 348 U.S. 839, 75 S.Ct. 42, 99 L.Ed. 661 (1954).

The characterization of the action below as a direct review proceeding and not an enforcement action is critical because, although both involve "orders for the payment of money," only § 16(2) actions for the *enforcement* of orders for the payment of money are brought as ordinary civil actions. 49 U.S.C. § 16(2); *Atlantic, supra,* 383 U.S. at 585, 86 S.Ct. at 1006. In contrast, direct review proceedings are distinct proceedings for judicial review and have special procedural requirements, in particular that such actions be brought by or against the United States, 28 U.S.C. § 2322. Originally, injunctive relief required a three-judge district court, 28 U.S.C. § 2325, with direct review to the Supreme Court under 28 U.S.C. § 1253. However, §§ 2324–25 were repealed in 1975, Act of Jan. 2, 1975, § 7,

---

**5.** 28 U.S.C. § 1336(a) provides:

Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures.

Pub.L. No. 93–584, 88 Stat. 1918, and judicial review of orders other than for the payment of money or to enforce ICC orders is now in the courts of appeal, like review of other administrative agencies, with discretionary review by writ of certiorari in the Supreme Court. 28 U.S.C. §§ 1254 (writ of certiorari), 2341 *et seq.* (Judicial Review Act of 1950 (Hobbs Act)); *see generally* H.R.Rep. No. 93–1569, 93d Cong., 1st Sess. 1, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7025, 7034–36 (report of Department of Justice).

The action below was, in my opinion, a direct review proceeding to review an adverse reparations order. The fact that the ICC order under attack was one relating to the payment of money and thus in substance one for the payment of money meant that the order was "not of sufficient public importance to justify the accelerated judicial review procedure [the three-judge district court and direct review by the Supreme Court]." *United States v. ICC, supra*, 337 U.S. at 442, 69 S.Ct. at 1419. "Thus, though the procedures set out in 28 U.S.C. §§ 2321–25 (1964 ed.) otherwise govern § 17(9) proceedings to review such orders, § 2325 is not applicable and the matter may be adjudicated by a single judge." *Atlantic, supra*, 383 U.S. at 585, 86 S.Ct. at 1007. The provision requiring a three-judge district court (now repealed, *see* discussion *supra*) does not apply to judicial review of adverse reparations orders, but the other provisions, including that requiring the action be brought against the United States, are applicable. Moreover, a reviewing court "may not formally set aside

the Commission's order in an action in which neither the Commission nor the United States is a party." *Atlantic, supra*, 383 U.S. at 599, 86 S.Ct. at 1014.

In response to the argument that an action to set aside an order for the payment of money should be treated exactly like an action to enforce an order for the payment of money, I note that the Supreme Court in the *Atlantic* case addressed a similar argument. In that case the ICC resisted allowing a carrier to bring a direct review proceeding as a cross-action to the shipper's enforcement action. The ICC argued that "reparation orders respecting past rates are not of sufficient general importance to require their defense by the United States and the Commission, and the direct review proceeding should not be permitted regardless of the court in which it is brought." *Atlantic, supra*, 383 U.S. at 605, 86 S.Ct. at 1017. The Supreme Court stated that this was apparently not the view of Congress and cited the 1964 amendments which placed jurisdiction and venue of the direct review proceeding following reference to the ICC under the primary jurisdiction doctrine in the referring court, 28 U.S.C. §§ 1336(b), 1398(b), in the referring court and not as an incident of the original action. *Atlantic, supra*, 383 U.S. at 605–06, 86 S.Ct. at 1017. Thus, an action for direct review of an ICC order, which must be brought against the United States, may involve an order "for the payment of money." Apparently only actions to enforce an order for the payment of money pursuant to § 16(2) of the Act do not require the United States as a party to the action.[6]

---

6. *See generally Atlantic, supra*, 383 U.S. at 579–89, 605–06, 86 S.Ct. at 1003–08, 1017. In my view, actions to enforce orders for the payment of money are brought in the district courts, 28 U.S.C. § 1336(a), as any other civil action, 49 U.S.C. § 16(2); the United States need not be made a party. However, actions to enforce non-payment orders, although properly brought in the district courts, 28 U.S.C. § 1336(a), must be brought by or against the United States, 28 U.S.C. §§ 2321(b), 2322. Actions to set aside orders for the payment of money are brought in the district court and not the courts of appeals; such actions fall within the "Except as otherwise provided by an Act of

Congress" language of 28 U.S.C. § 2321(a). 28 U.S.C. §§ 1336(a), 1336(b) (referral actions); *see also United States v. ICC, supra*, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (direct review of adverse reparations order before single-judge district court). Such an action must be brought by or against the United States, 28 U.S.C. §§ 2321(a), 2322. Finally, actions to set aside non-money orders are properly brought in the courts of appeals and by or against the United States, 28 U.S.C. §§ 2321(a), 2322, unless the underlying order was referred to the ICC, in which case the referring court has exclusive jurisdiction. 28 U.S.C. § 1336(b).

As noted by the Supreme Court, the statutory provisions controlling the availability of judicial review in this case are "an historical patchwork subject to more than one interpretation." *Atlantic, supra,* 383 U.S. at 586 n. 4, 86 S.Ct. at 1007 n. 4. Nonetheless, because the proceeding below was a direct review proceeding to set aside an ICC order for the payment of money and as such should have been brought against the United States, but was not, I would find that the district court lacked subject matter jurisdiction and would reverse the denial of the Rule 60(b)(4) motion.

BRIGHT, Circuit Judge, joining in the dissent.

I join in Judge McMillian's dissent. When the case was returned to the district court, the shipper moved for a summary judgment on its counterclaim, seeking a construction of the tariff inconsistent with the Commission's ruling. That motion triggered the statutory procedures for review of an ICC order, which require that the United States be joined. 28 U.S.C. § 2322 (1976). The statutes preclude a federal trial judge from making a tariff interpretation without complying with the procedures mandated by Congress; thus, such ruling amounts to a nullity.

In *Schwartz v. Bowman,* 244 F.Supp. 51 (S.D.N.Y.1965), *aff'd sub nom. Annenberg v. Alleghany Corp.,* 360 F.2d 211 (2d Cir.) (*per curiam*), *cert. denied,* 385 U.S. 921, 87 S.Ct. 230, 17 L.Ed.2d 145 (1966), the court appropriately observed:

> If it can be established extrinsically that the practical effect of success on the merits by the party making a claim would be to invalidate the [ICC] order, [28 U.S.C. § 2322] applies and its requirements must be met. [*Id.* at 68 (citations omitted).]

The absence of the United States as a party was "a fatal jurisdictional defect." *Id.* at 68. Thus, the judgment was void.

Moreover, I find nothing in the record that indicates that the district court expressly or impliedly made a determination that it had jurisdiction to overrule the Commission's order construing the tariff in question. Neither party called the court's attention to the relevant statutory sections, 28 U.S.C. §§ 2321–23, and the district court apparently assumed it could overturn the Commission's ruling. I find nothing in the record to show that the district court considered whether it possessed jurisdiction to overrule the Commission solely on the shipper's motion. The jurisdictional issue did not surface until the Railway Co. brought its motion for relief from a void judgment under Fed.R.Civ.P. 60(b)(4). The district court then should have corrected its jurisdictional error and granted the motion. Accordingly, I, too, would reverse.

HEANEY, Circuit Judge, joins in the views expressed in Judge Bright's dissent.