# BAGGETT TRANSPORTATION COMPANY

v.

## The UNITED STATES.

### No. 138–80C.

United States Court of Claims.

Feb. 10, 1982.

Mel P. Booker, Jr., Alexandria, Va., attorney of record, for plaintiff, Hernly & Booker, P. C., Alexandria, Va., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D. C., for defendant.

Before NICHOLS, BENNETT and SMITH, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This is a case on the availability to the government of its reduced shipping rates under section 22 of the Interstate Commerce Act.[1] The question is whether those rates apply to shipments, on government bills of lading, of materials sold by the government to foreign countries under the Arms Export Control Act.[2] We hold that section 22 rates are not applicable to such shipments.

Plaintiff is a motor carrier. In 1977, plaintiff carried explosives for defendant from various depots of defendant to various domestic ports. This was the domestic leg of shipping those explosives to foreign countries under foreign military sales contracts executed by defendant. The government bills of lading for two-thirds of the shipments had special annotations that, as foreign military sales shipments, the lower government shipping rates allowable under section 22 of the Interstate Commerce Act would not apply,[3] and, for all of the shipments, plaintiff charged and was paid at the standard rates. GSA, however, on audit of the billing, determined that section 22 rates were applicable and deducted the differential from other sums owed to plaintiff. Plaintiff sues for refund of that amount, stipulated to be $34,669.57.

Section 22 of the Interstate Commerce Act is a special exception to the Act's prohibition of discriminatory rates, permitting carriers to agree with the government to a lower rate schedule for government carriage. At the time of the events in this case, the section read:

Nothing in this chapter shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States * * *

49 U.S.C. § 22 (1976) (recodified in amended form at 49 U.S.C. § 10721 (Supp. III 1979)). Such a lower rate schedule had been agreed upon between defendant and plaintiff.

■ The primary issue on the facts before us is whether plaintiff carried the explosives "for the United States" within the meaning of section 22. Putting aside for the moment whether the bill of lading annotations contractually modified the rate structure, it is otherwise indisputable that shipments eligible for a lower rate automatically receive it. It is general rate law that a shipper is given the benefit of the lowest applicable rate. *Emery Air Freight Corp. v. United States*, 205 Ct.Cl. 49, 63, 499 F.2d 1255, 1262 (1974); *Union Pac. R.R. v. United States*, 163 Ct.Cl. 473, 479 (1963); *Western Pac. R.R. v. United States*, 150 Ct.Cl. 1, 11, 279 F.2d 258, 264 (1960).

Plaintiff asserts that the test of section 22 is not met when goods are transported that have been sold under the authority of the Arms Export Control Act, the authority for the foreign military sales contracts in this case. Section 2792(b) of that Act provides that the government shall not bear the financial burden of such services as the carriage provided by plaintiff:

Administrative expenses incurred by any department or agency of the United States Government (including any mission or group) in carrying out functions under this chapter which are primarily for the benefit of any foreign country shall be fully reimbursed from amounts received for sales under [other sections] of this title.

---

1. 49 U.S.C. § 22 (1976) (recodified in amended form at 49 U.S.C. § 10721 (Supp. III 1979)).

2. 22 U.S.C. § 2751 *et seq.* (1976 & Supps.).

3. Typed on these bills of lading was: "FOREIGN MILITARY SALES SHIPMENT. SECTION 22 DOES NOT APPLY."

22 U.S.C. § 2792(b) (1976) (since amended). Plaintiff's argument is that this mandate on the government to collect reimbursement for shipping charges means that the shipping should not be regarded as "for the United States." Applying the lower government rate in such a reimbursement situation would result in the benefit flowing only to the reimbursing foreign country, which is ineligible under section 22 to receive it. Defendant's response to this contention is that plaintiff's focus on the financial benefits and burdens is too narrow, that the United States benefits greatly from the improved foreign relations that foreign military sales foster, and that such a benefit is sufficient to satisfy section 22.

■ Plaintiff's argument is the correct one. It is plain from the history of litigation over section 22 that government rates are applicable only when a direct and substantial, pecuniary benefit flows to the government. *Interpretation of Government Rate Tariff for Eastern Central Motor Carriers Ass'n*, 323 I.C.C. 347, 349–50 (1964) (*Eastern Central*), and cases cited therein; *Southern Pac. Transp. Co. v. United States*, 205 Ct.Cl. 451, 505 F.2d 1252 (1974). "[T]he total benefit of special rates must accrue to the government. Therefore, section 22 rates are proper only where the government pays the charges or directly and completely reimburses the party which initially bears the freight charges." *Eastern Central* at 351. In the foreign military sales situation, the benefit of improved foreign relations that the defendant claims is neither pecuniary nor sufficiently direct and substantial. The determining factor is who pays the cost, and this is exactly what defendant is mandated by the Arms Export Control Act not to do.

*Eastern Central* involved a situation strikingly similar to the one now before us. Carriers had requested the Interstate Commerce Commission to rule whether section 22 rates were applicable to carriage on commercial bills of lading which stated that the government would reimburse the initial payer. In advising that section 22 rates would apply, the Commission focused directly on the reimbursement situation and ruled that it is the reimbursing party that should be seen as receiving the benefit of the carriage. In *Eastern Central*, the reimbursing party was the government and section 22 rates were used. In the instant case, however, the reimbursing party is not eligible for section 22 rates and so we hold against their use.

Defendant tries to distinguish *Eastern Central* on the ground that the instant case involves government bills of lading and not commercial ones. We find this distinction irrelevant to the policy put forth that the identity of the reimburser determines the applicability of the rate.

Defendant also contends for the applicability of section 22 rates to foreign military sales shipments because the foreign customers do not always reimburse. This argument does not help, however. First, defendant has not offered to show that it lacks reimbursement for the shipping charges involved in this case, and second, the Arms Export Control Act puts defendant under an affirmative duty to collect reimbursement. If defendant does not do so, it should not be further allowed to shift the resulting financial burden, or part of it, to the carrier.

Since the court holds that plaintiff's carriage of explosives was not "for the United States" for the purposes of section 22, we do not need to address the question of whether the bill of lading annotations would have been contractual modifications of section 22 rate applicability.

Accordingly, plaintiff's motion for summary judgment is granted, defendant's cross-motion for summary judgment is denied, and judgment is entered for plaintiff in the sum of $34,669.57.

NICHOLS, Judge, concurring:

I agree with and join in Judge Bennett's opinion, but I do not think the issue is quite so simple as he makes it appear. In the first place, practice as to use or nonuse of section 22 rates before 1976 is not directly relevant because 22 U.S.C. § 2792(b) was added only that year. Apparently some did

not then immediately get the word, and practice by government shipping officials for a while was inconsistent. A controversy arose and before resolving it, the accounting officers received the views of the Department of Defense, which, by letter of March 4, 1977, over the signature of L. Nederlehner, Esquire, Acting General Counsel, advised that section 22 rates applied only when the government obtained "the direct and entire benefit of the special rates," that a legal argument could be made either way, whether the United States or the foreign military buyer actually received such benefit, and that procurement activities would be advised that section 22 rates should not be applied in future, when the full reimbursement was recovered. As to completed transactions, it would be improper to bill the foreign customers for added transportation costs after the transaction was otherwise closed. In such circumstances it could be argued that a section 22 rate originally applied was justified because the government would have to bear the full nonsection 22 rate, if applicable.

This Solomon-like decision was unpersuasive to the government's accounting officers to whom it was addressed. They insisted on recovering uniformly the excess of full rates over section 22 rates, using the usual offset procedure in completed transactions. They did not believe that the transportation costs, either full or reduced, were being passed on to the foreign customers.

After May 1, 1978, everyone had got their act together, full rates were paid the carriers, or specially agreed rates for this class of business, but in any case not section 22 rates, and reimbursement was obtained from the foreign customers to the satisfaction of accounting officers. The instant litigation relates to 1977 shipments.

Thus for the 1977 period application of the "direct and entire benefit" rule depends on whether one applies it to what was actually done or to what ought to have been done.

In my view the interpretation of the agency that administered the Foreign Military Sales program, the Department of De-fense, at a period so soon after the new legislation was enacted, was entitled to more respect than it received from the accounting officers, nor did they weigh sufficiently the carriers' legal rights in the premises. It was not fair or equitable, nor in accord with accepted principles of statutory construction, to impose a burden on the carriers they had not agreed to because a proper job was not being done in implementing the congressional intention to make the foreign third party pay the full administrative costs, including all transportation. Carriers had no way of knowing that statements on government bills of lading that section 22 rates were inapplicable could not be relied on because government officials were not collecting as they should be from these third parties. Thus, I come down strongly for applying the "direct and entire benefit" rule according to whether the government should by law have enjoyed the benefit, rather than whether, unknown to the carrier, it did not in fact.

While the GSA actually audited the bills of lading and made the disallowances, it did so under the overall supervision of the Comptroller General, who made the decision we here reverse. It is well known, of course, that he possesses the ultimate authority to disallow claims against the government including those that the executive branch considers just and fairly owed. His decisions of course receive great respect in the courts, but are not necessarily binding there. In this instance it is noteworthy that the Comptroller General did not contest the "direct and entire benefit" rule, but rather limited its application to cases where the actual realization of the "direct and entire benefit" is not undercut by maladministration elsewhere. This is a perfectly tenable position, though I consider it wrong. It is much easier for a court to say it is wrong, than it is for an accounting officer. It may indeed once in a while be improper for an accounting officer to resolve close and debatable questions against the government, and proper rather for him to let the courts do so, which is one of the things they are for.