MUNITIONS CARRIERS
CONFERENCE, INC.,
et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

Civ. No. 96–56 (TFH).

United States District Court,
District of Columbia.

June 19, 1996.

John Robert Bagileo, Jr., Bagileo, Silverberg & Goldman, Washington, D.C., for Plaintiffs.

Edith Marshall, Kimberly N. Tarver, Nancy Healy, U.S. Attorney's Office, Washington, D.C., for Defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Pending before the Court in this government contracts case are cross-motions for summary judgment and the defendants' incorporated motion to dismiss. The Court has exhaustively reviewed the parties' briefs on the motions, the oral arguments presented to the Court, and the supplemental briefs submitted after the hearing. For the reasons stated below, the Court will grant the plaintiffs' motion for summary judgment and deny the defendants' motion to dismiss or for summary judgment.

## I. BACKGROUND

This case concerns the United States military's bidding process for commercial freight shipments. The Military Traffic Management Command ("MTMC") is responsible for arranging these shipments for all branches of the military. The dispute centers around one subset of this business, Foreign Military Sales ("FMS") shipments, in which foreign governments buy goods from the United States. The plaintiffs, comprised of two groups of carriers providing freight transport to MTMC for FMS and other shipping activity, challenge a notice promulgated by MTMC which seeks to alter bidding procedures for FMS shipments.

The effect of MTMC's proposed change upon the FMS bidding process is only understandable in the context of the procedure MTMC uses for other shipping transactions. Carriers are invited to bid in one of two ways: they can respond to solicitations for "tenders," or bids, for general traffic ("GT") contracts, or submit unsolicited voluntary tenders for other business. GT contracts are requirements contracts: they encompass all of the shipping business from a particular military installation for a specific period of time. The unsolicited voluntary bids are used to fill other shipping needs. In both cases, carriers usually bid at rates lower than normal commercial rates.

Shipments of FMS goods are not covered by these bid procedures. FMS bids are submitted separately, and carriers charge more than the "tender rate" they are willing to

accept for GT and voluntary tender business. As explained in much greater detail below, this difference between FMS and non-FMS rates stems from a statutory provision allowing the government to accept discounted rates for its own shipping.

The Arms Export Control Act, 22 U.S.C. § 2751 *et seq.*, governs some aspects of FMS transactions. The statute requires that the foreign government purchasing the goods pay all of the administrative expenses associated with the sale. 22 U.S.C. §§ 2761(a), 2761(e), 2792(b). This includes shipping to the foreign country. Sometimes the foreign government arranges its own shipping, but on other occasions MTMC makes the arrangements. When MTMC coordinates the shipping, it collects the payment from the foreign government and reimburses the carrier.

The method for extracting shipping costs from the foreign government is not precise. Usually, a percentage of the total sales amount is added to cover shipping. Sometimes this amount is more than the carrier's bill, and MTMC keeps the extra funds. Regardless of how the foreign government is billed, the payment associated with shipping costs goes into a revolving fund. The defendants have stated that the fund is operated with the purpose of keeping it balanced, but the plaintiffs suggest that MTMC regularly turns a profit.

On December 13, 1995, MTMC published a "Notice" in the Federal Register stating that in the future, carriers submitting bids for GT or voluntary tender work will have to include FMS shipments in their bid, all at one rate. *Movement of Foreign Military Sales (FMS) Shipments—Policy Change*, 60 Fed.Reg. 64031 (Dec. 13, 1995). Essentially, the notice establishes a new condition precedent for carriers who seek the government's GT and voluntary tender business: they must agree to accept FMS work at the same rate. Though the Notice scheduled the change to be phased in over time, all existing contracts would eventually have to include bids for FMS work. The plaintiffs challenge the va-

lidity of the Notice on several procedural and substantive grounds, discussed in turn below.

## II. ANALYSIS

### A. Applicability of APA Rule Making Procedures

The Notice promulgated by MTMC did not set forth any procedures or establish a time period for public comment to its effective date. The plaintiffs argue that the Notice is invalid because MTMC did not comply with 5 U.S.C. §§ 553(b), (c), and (d), provisions of the Administrative Procedure Act ("APA"), which require agencies to provide a notice and comment period for substantive rules. However, matters "relating to ... public property, loans, grants, benefits, or contracts" are exempt from the requirements of § 553. 5 U.S.C. § 553(a)(2). This exemption applies squarely to MTMC's Notice.

The D.C. Circuit has never had occasion to hold that the "contracts" provision in § 553(a)(2) exempts procurement regulations from the notice-and-comment requirements. However, it has remarked that

> the salutary effect of the [APA's] public comment procedures cannot be gainsaid, so only reluctantly should courts recognize exemptions therefrom. But even construed narrowly, § 553(a)(2) cuts a wide swath through the safeguards generally imposed on agency action.

*Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070, 1082 (D.C.Cir.1978). In that case, the Court noted that the legislative history of the APA only minimally limited the reach of § 553(a)(2), by requiring that subjects listed as exempted must be "clearly and directly involved" in the agency action at issue.

Here, there is no question that the Notice clearly and directly involved public contracts, in the form of FMS shipment agreements. Thus, the Notice is exempt from the requirements of § 553. *See Essex Electro Engineers, Inc. v. United States*, 960 F.2d 1576 (Fed.Cir.), *cert. denied*, 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992) (holding that Federal Acquisition Regulations inter-

preting the Contracts Dispute Act were exempt from § 553).[1]

In one case, the D.C. Circuit did hold that a particular agency action was not within the public contracts exception. In *Independent U.S. Tanker Owners Committee v. Lewis*, 690 F.2d 908 (D.C.Cir.1982), the Court examined regulations setting forth procedures under which owners of merchant marine ships could reimburse the United States for construction subsidies, thereby freeing the ships to compete in the U.S. domestic market. The agency argued that the regulations were merely part of the contracting process under which the government chose to subsidize some ship construction, but the Court held that since the prohibition against subsidized merchant marine ships participating in the domestic market was established by statute, the regulations at issue "fill[ed] in the statutory scheme," and did not merely exercise contractual power, as the agency did when it determined who would receive subsidies. 690 F.2d at 918 n. 43.

There are at least two reasons why this conclusion does not control in our case. First, the statements quoted above appear to be dicta: immediately after making them, the Court pointed out that the promulgating agency had its own binding regulations requiring a notice and comment procedure. *Id.* Therefore, the agency's own regulations canceled any effect of the public contracts exception. Second, the conclusion in this part of *Independent Tanker Owners* was overturned, or at least questioned, a few years later. In *American Maritime Association v. United States*, 786 F.2d 1186, 1190 (D.C.Cir.1986), the court held that the § 553(a)(2) exception did apply to the Maritime Subsidy Board's action permitting a subsidized merchant ma-

rine ship to participate in a market from which the ship was usually statutorily barred.

Because the Court determines that the public contracts exception applies to MTMC's notice, it need not reach the question of whether the Notice was an interpretative rule, policy statement, or other type of pronouncement exempt from the notice and comment requirements.

## B. 41 U.S.C. § 418b

At oral argument on the cross-motions for summary judgment, the defendants brought a previously unmentioned statute to the Court's attention. 41 U.S.C. § 418b(a) requires that

> no procurement policy, regulation, procedure, or form (including amendments or modifications thereto) relating to the expenditure of appropriated funds ... may take effect until 60 days after the procurement policy, regulation, procedure, or form is published for public comment in the Federal Register.

Other provisions of the statute require that the comment period last for at least 60 days, and that the published notice include "a request for interested parties to submit comments on the proposal." 41 U.S.C. §§ 418b(b), 418b(c). Following oral argument, the parties submitted supplemental briefs with respect to this provision.[2] To date, there appears to be no case law interpreting § 418b.

■ *1. Standing.* Despite the defendants' arguments to the contrary, the plaintiffs have standing to enforce § 418b. To establish constitutional standing as required by Article III, the plaintiffs must have suffered an "injury in fact." They must also

---

1. Some relatively recent floor statements of various United States Senators support this conclusion. In connection with two bills introduced for the purpose of requiring public notice and comment on procurement regulations, the elected officials expressed their belief that the APA requirements did not apply to such regulations. 130 Cong.Rec. 12,440 (1984) (statement of Sen. Cohen); *Id.* at 29,973 (summary of provisions of H.R. 4209 in statement of Sen. Weicker); *Id.* at 29,975 (statement of Sen. Cohen); *Id.* at 29,977 (statement of Sen. Bumpers); *Id.* at 29,979 (statement of Sen. Dixon). Though these *post hoc* statements carry little, if any, weight as legis-

lative history of the APA, it is at least worth noting that they are consistent with the holding of *Essex Electro Engineers* and with the plain language of § 553(a)(2).

2. In their supplemental brief, the defendants argued that the mere existence of § 418b demonstrated the inapplicability of the APA rule making procedures to procurement regulations. The Court does not rely upon this argument in reaching the conclusion, above, that the Notice fits within the public contracts exemption of 5 U.S.C. § 553(a)(2).

show a causal connection between the injury and the conduct complained of, and that it is likely that the injury will be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In cases examining the APA's notice and comment procedures, the Court of Appeals has "held unequivocally that when a party complains of an agency's failure to provide notice and comment prior to acting, it is that failure which causes 'injury'." *JEM Broadcasting Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C.Cir.1994). Upon comparing the language of the APA provision to § 418b, the Court can discern no reason why the same conclusion would not apply to the latter statute. The causal connection and redressability prongs are also easily met: MTMC's failure to abide by § 418b caused the plaintiffs' injury, and an order by this Court requiring compliance with § 418b would redress that injury.

Furthermore, the plaintiffs also meet the prudential standing requirement that they be within the zone of interests sought to be protected by § 418b. In *JEM Broadcasting*, the Court held that "interested parties are 'aggrieved' by the order promulgating the rules" without notice or comment. *Id.* Parties are so aggrieved only when they are within the zone of interests sought to be protected by the statutory provision alleged to be violated. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

The legislative history of § 418b suggests that its drafters may have believed that parties could not sue to enforce its provisions.[3] When the two chambers of Congress had reached agreement on the language of § 418b, some of its sponsors made statements on the floor of the Senate to that effect. *See* 130 Cong.Rec. 29,975 (statement of Sen. Cohen) (noting that some "did not feel it was fair to unduly burden the procurement process with APA/type rule making

procedures," and that "subjecting procurement regulations to APA procedures has the potential for blocking procurement actions through litigation over whether an agency has complied with the rule making requirements"); *Id.* at 29,977 (statement of Sen. Bumpers) (noting "concerns some agencies have about being brought under the full scope of the [APA]"). Whatever credence the Court may give to this fairly unreliable form of legislative history, it can find nothing in the language of § 418b suggesting that the plaintiffs should be entirely foreclosed from suing to enforce its provisions. Perhaps the distinction drawn by the lawmakers between the APA and § 418b refers to some of the qualifying substantive language in § 418b, which is discussed below but does not affect the standing question.

■ *2. Applicability to DTMR.* The plaintiffs themselves suggest that § 418b may not apply to MTMC's FMS shipments.[4] They point out that § 418b is part of the Office of Federal Procurement Policy [OFPP] Act, 41 U.S.C. §§ 401–420. The Act gives the OFPP authority to formulate government-wide regulations—the Federal Acquisition Regulation ["FAR"]—when necessary. 41 U.S.C. §§ 405(a), 405a.

It is clear that freight transportation acquired by bills of lading, the type of service at issue here in the FMS shipments, is not governed by the FAR itself. 48 C.F.R. §§ 47.000, 47.200. The parties agree that the Defense Traffic Management Regulations (DTMR) govern the administration of FMS shipments. The plaintiffs suggest that § 418b applies only to the FAR, and not to the DTMR, but the Court is not so persuaded.

There is nothing in § 418b which explicitly limits its application to the FAR. In fact, the language of § 418b is broad: it invalidates any "procurement policy, regulation, procedure, or form . . . relating to the expen-

3. The parties in this case did not discuss the legislative history of § 418b in their supplemental briefs.

4. The plaintiffs made this argument to show that § 418b was not duplicative of the APA notice and comment provisions. However, they also argued

in the alternative that § 418b did apply to this case and was violated. Because the Court has decided that the APA provisions did not apply here, it must consider this argument in order to resolve accurately all relevant issues concerning § 418b.

diture of appropriated funds." Furthermore, other sections of the OFPP Act appear to mention non-FAR regulations. *See, e.g.,* 41 U.S.C. § 405(f) ("Oversight of regulations promulgated by other agencies relating to procurement"); 41 U.S.C. § 408 (concerning authority of executive agencies to "prescribe ... regulations" under other existing law); 41 U.S.C. § 413 ("Tests of innovative procurement methods and procedures"); 41 U.S.C. § 414(1) (concerning agencies' responsibilities to establish "policies, procedures, and practices" encouraging cost-effective competitive bidding). Therefore, there is no reason to conclude that the OFPP Act in general, and § 418b in particular, apply only to the FAR itself.

It is true that some portions of § 418b's interpreting regulation mention only the "FAR system," to the apparent exclusion of other regulations like the DTMR. *See* 48 C.F.R. §§ 1.501–2(a) & (b) (requiring search for public comment when revisions are made to "the FAR system"). However, the FAR system includes supplements by other agencies, including DFARS, the Department of Defense Federal Acquisition Regulation Supplement, which is subject to the provisions of § 418(b). *In Re Grimes Oil Company,* 69 Comp.Gen. 676 (1990). The legislative history suggests that § 418b was intended to apply to "agency supplements to the FAR as well as subagency supplements on down to the lowest level." 130 Cong.Rec. 29,976 (1984) (statement of Sen. Cohen). Since the FAR itself refers to the DTMR for "[a]dditional guidance," 48 C.F.R. § 47.200(e), it is reasonable to conclude that DTMR falls within the FAR system as an agency supplement. In any case, though, the language of § 418b and other portions of the OFPP Act are clear enough to demonstrate that all procurement regulations, including the one at issue here, are subject to § 418b's notice and comment provisions.

▪ *3. Constructive Notice.* The defendants argue that even if they did not comply with the requirements of § 418b, the plaintiffs enjoyed constructive notice and a sufficient opportunity to comment. They point out that members of the National Motor Freight Traffic Association, ("NMFTA"), one of the plaintiff groups, learned about the proposed Notice before it was published in the Federal Register, and counsel for the NMFTA sent a letter to MTMC concerning the Notice before its publication date. Furthermore, one carrier sent a comment to MTMC after the Notice was published. Third Declaration of Francis Galluzzo, ¶¶ 3, 5–8, 10 (attached to defendants' supplemental brief).

This constructive notice and comment argument is unavailing for at least two reasons. First, there is no evidence that all of the plaintiffs received notice. In their supplemental brief, the plaintiffs state that most of the members of the Munitions Carriers Conference, the other plaintiff group, do not belong to the NMFTA. Without more evidence than that presented in the Galluzzo declaration, there is no reason to believe that MTMC's prepublication transmittal of the Notice to NMFTA sufficed to notify all of the plaintiffs. *But cf. Union Oil Company of California v. EPA,* 821 F.2d 678, 683 (D.C.Cir.1987) (interpreting APA notice and comment provisions and holding that plaintiffs had sufficient notice of proposed agency standard when plaintiffs referred to and objected to standard at public hearing).

Second, § 418b(a) requires publication "for public comment." There is no evidence that the Notice was published for comment—it appeared that MTMC would abide by the terms of the Notice in spite of any comments received. No explicit comment period was set forth in the notice, even though § 418b(b) requires that the public comment period last for at least 30 days. *Cf. Home Box Office, Inc. v. FCC,* 567 F.2d 9, 35 (D.C.Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977) (interpreting APA notice and comment provisions and noting that "the opportunity to comment is meaningless unless the agency responds to significant points raised by the public"); *and National Tour Brokers Ass'n v. United States,* 591 F.2d 896, 899 (D.C.Cir.1978) (interpreting APA notice and comment provisions and holding that notice "looking toward the formulation of possible legislative amendments" did not provide constructive notice of proposed rulemaking).

340

**4. *Significant Effect/Cost.*** Section 418b only requires notice and comment when the proposed policy, regulation, procedure, or form has "a significant effect beyond the internal operating procedures of the [issuing] agency ... or ... a significant cost or administrative impact on contractors or offerors." Both conditions are satisfied here. Requiring carriers to solicit FMS business together with other traffic, at one combined rate, has a significant effect and administrative impact on the way carriers bid for work with MTMC. The plaintiffs also maintain that required one-rate bidding will harm them economically, thereby imposing a "significant cost," but the Court does not reach this issue, which involves a matter of factual dispute.

The defendants claim that the Notice has neither a significant effect nor a significant administrative impact because it simply constitutes the required response to a statutory change already effected. As discussed below, this argument is unavailing.

**5. *Conclusions.*** For at least two legal reasons, the Notice is inoperative as a result of the defendants' failure to provide adequate notice and comment. First, § 418b itself requires that "no procurement regulation ... may take effect" without the proper procedures having been followed. Second, this Court may set aside agency actions found to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

In reaching these conclusions, the Court does not address the plaintiffs' argument in the alternative that MTMC was required by the terms of the DTMR to "negotiate" with the carriers before publishing the Notice.

**C. Substantive Conflict Between the Notice and Relevant Statutes**

The plaintiffs maintain that the interstate commerce statutes do not grant authority for "reduced" rates for FMS shipping, and therefore the Notice is contrary to law. In response, the defendants assert that recent statutory changes, read in context with MTMC's obligation to seek cost-effective services, not only permit but require MTMC to abide by the terms of the Notice.

Recently, the interstate commerce law providing the context for this argument has been revised drastically. The old statutory regime, under which the separate rates for domestic bids and FMS shipments developed, required that

(a)(1) Except as provided in this section, the full applicable commercial rate shall be paid for transportation for the United States Government by a common carrier....

(b)(1) ... A common carrier providing transportation or service ... may transport property for the United States government without charge or at reduced rates.

49 U.S.C. § 10721. In sum, instead of charging the "full applicable commercial rate," carriers could charge less when providing services to the U.S. government. The Court of Claims decided that FMS shipments are not "services provided to the government," because the foreign government, and not the U.S. government, is responsible for paying the shipping fees, even if they are collected through MTMC. *Baggett Transportation Company v. United States*, 229 Ct.Cl. 428, 670 F.2d 1011 (1982). Therefore, carriers could not charge, and the United States could not pay, the lower § 10721(b)(1) rates for FMS shipments. Instead, the United States had to pay the "full applicable commercial rate" mentioned in § 10721(a)(1).

This statutory scheme has changed, and the parties disagree over the importance of the revisions. The Trucking Industry Regulatory Reform Act of 1994, ("TIRRA"), Pub.L. No. 103–311, 108 Stat. 1683 (codified in scattered sections of 49 U.S.C.), abolished the requirement that carriers file tariffs with the Interstate Commerce Commission ("ICC"), except for a couple of arcane categories of goods not relevant here. The ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (codified in scattered sections of U.S.C.), went even further and abolished the ICC altogether. The Termination Act moved Section 10721 to 49 U.S.C. Sec. 13712, and amended it to read:

A carrier providing transportation service for the United States Government may transport property or individuals for the United States Government without charge

or at a rate reduced from the applicable commercial rate.

The final legislative report of the ICC Termination Act explains that it "preserves current law that transportation may be provided for the U.S. Government at *discounted rates*." H.R.Rep. No. 422, 104th Cong., 1st Sess. 209 (1995), U.S.Code Cong. & Admin.News 793.

The defendants argue that the change in statutory context is crucial. They maintain that because carriers no longer have to file tariffs with the ICC, those published rates would no longer apply to FMS shipments charged at the "full applicable commercial rate." Therefore, the defendants argue, the rate for FMS shipments can be charged at the reduced rates allowed for shipments for the U.S. government, thus allowing one bid for FMS and non-FMS shipments.

The plaintiffs maintain that the abolition of the ICC filing requirement is much less crucial, and note that carriers are still required to keep their rates on file privately, so that the rates may be scrutinized for their applicability and reasonableness. The Court need not resolve the exact status of freight transportation filing requirements, or the fixity of some market rate. It is clear that there is still a two-level rate regime. The new statute codified at § 13712 still anticipates "discounted rates" for the government, and the rationale of *Baggett* requires that FMS rates not include this discount. To require carriers to submit one rate for these two types of shipments would either (1) contravene the holding of *Baggett* by giving foreign governments the benefit of discounted rates; or (2) render the statutory discount provision a nullity by preventing carriers from submitting discounted bids for any MTMC work.[5] Therefore, the Court concludes that the Notice is "not in accordance with law," and must be set aside. 5 U.S.C. § 706(2)(A).

In reaching these conclusions, the Court does not address the plaintiffs' other arguments challenging the substantive validity of the Notice.

## III. CONCLUSION

MTMC's Notice was not subject to the notice-and-comment provisions of the APA, but it was subject to the similar requirements set forth in 41 U.S.C. § 418b. Because MTMC did not comply with § 418b, either actually or constructively, the Notice is without effect. Furthermore, the provisions of the Notice improperly required carriers to combine discountable rates to the U.S. government with nondiscountable rates for FMS shipments. For these reasons, the Court will enter summary judgment for the plaintiffs. An order will accompany this opinion.

## *ORDER*

In accordance with the Memorandum Opinion issued today, it is hereby **ORDERED** that the defendants' motion for summary judgment or to dismiss is **DENIED.** It is **FURTHER ORDERED** that the plaintiffs' motion for summary judgment is **GRANTED,** and the defendants are enjoined from enforcing the Notice issued at 60 Fed.Reg. 64031 on December 13, 1995. It is **FURTHER ORDERED** that the provisions of that Notice are hereby set aside as improperly promulgated and contrary to law.

---

**5.** The defendants request that the Court overturn or question *Baggett*. They claim that FMS shipping is essentially "for the U.S. government" since MTMC would benefit economically and administratively from the rate consolidation. The Court declines to adopt this logic. The defendants have not made a substantial evidentiary showing to support their speculative claim of increased efficiency under a consolidated rate regime. Furthermore, even if MTMC were to enjoy some benefits through rate consolidation, it would still strain the language of § 13712 to say that such benefits established that FMS shipments were "for the U.S. government."